Cynthia Everett RANDOLPH and
Lloyd E. Kelley, Appellants,

v.

Jackson WALKER L.L.P., and N.
David Bleisch, Appellees.

No. 14–99–00744–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 14, 2000.

Rehearing Overruled Oct. 26, 2000.

J. Marcus Hill, Houston, for appellants.

David Timothy Moran, Charles L. Babcock, Byron Daryl Bristow, Houston, for appellees.

Panel consists of Justices ANDERSON, EDELMAN, and DRAUGHN.*

## O P I N I O N

JOHN S. ANDERSON, Justice.

This is a defamation case which was resolved in the trial court by Rule 13 death penalty sanctions.

Appellants, Cynthia Randolph and Lloyd Kelley, challenge the trial court's order striking that portion of their pleadings containing claims against Jackson Walker L.L.P. and David Bleisch, attorneys for the appellees.[1] On appeal, appellants claim the trial court erred when it granted appellees' motion for sanctions because: (1) section 10.001 of the Texas Civil Practices & Remedies Code does not support the sanctions issued; (2) the court improperly made factual determinations of contested issues in a Rule 13 proceeding; (3) the claims against the attorney defendants are not groundless because the defamatory statements were published; and (4) appellees' attorneys cannot claim absolute privilege. We affirm.

## I.

### Factual and Procedural Background

The facts underlying this case are that Wayne Dolcefino, an investigative reporter with KTRK Television, conducted an investigation of Lloyd Kelley, who at the time was Houston's City Controller, uncovering Kelley's questionable business practices. Because Kelley refused to give Dolcefino access to city property and an on-camera interview, Dolcefino requested that his attorney, David Bleisch of Jackson Walker L.L.P., contact Kelley.

When the news story developed by Dolcefino and detailing Kelley's business and personal activities aired, Randolph[2] filed

---

\* Senior Justice Joe L. Draughn sitting by assignment.

1. In the trial court, Randolph and Kelley sued the appellees reflected in the style of this case, and Wayne Dolcefino, KTRK Television. Inc., C C Texas Holding Co., Inc., Capital Cities/ABC, Inc., Henry Florsheim, and David Gwizdowski. The trial court granted the appellees' motion in this case for Rule 13 sanctions and struck appellants' claims in their Third, Fourth, and Fifth Amended Petitions against Jackson Walker and Bleisch and dismissed those claims with prejudice. Thereafter, the trial court severed appellants' claims against Jackson Walker and Bleisch into the "A" trial court cause number reflected above. That severance made the interlocutory judgment granting sanctions and dismissing claims final and appealable. *See Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex.1994) (holding trial court may make a judgment final for purposes of appeal by severing the causes and parties disposed of by the judgment into a different cause).

In addition, on the same day as the severance, a "final judgment" was signed in the "A" cause number disposing of all claims as to all parties in the severed proceeding. It is from this final judgment that appeal is brought in our cause number 14–99–00744–CV. The defendants remaining after the severance, Dolcefino, et al., as well as the plaintiffs Randolph and Kelley, are also before this court on appeal in another proceeding. An opinion on rehearing was issued by this Court on June 8, 2000 in cause number 14–99–00026–CV, reversing and rendering judgment for the media defendants on the plaintiffs' defamation and other claims.

2. Cynthia Randolph, an executive assistant of Kelley's, was videotaped sunbathing at Splashtown with Kelley during normal business hours. Although Randolph originally

suit accusing Dolcefino of defamation. Kelley joined in the suit, and both subsequently joined appellees Jackson Walker and Bleisch as defendants, proceeding on defamation and conspiracy to defame claims stemming from Bleisch's contact with Kelley.

Procedurally, after appellants joined Jackson Walker and Bleisch, appellees filed a motion under·Texas Civil Procedure Rule 13 requesting that the trial court strike a portion of appellants' pleadings, claiming the attorneys were included in the suit only for purposes of harassment. The trial court agreed and struck the pleadings relating to any claims against either Jackson Walker or David Bleisch. After the sanctions were granted, appellants moved to sever the claims against Jackson Walker and Bleisch from those against the other defendants. The trial court granted that motion, severing the causes of action, and the appellants bring this appeal challenging the trial court's sanctions.

## II.

### Waiver

Appellees argue that appellants waived any error related to the trial court's order striking portions of their pleadings because appellants filed amended pleadings that did not include any claims against Jackson Walker or David Bleisch. We agree with appellees' position and address the waiver issue first. However, we will also address, in Part III below, the merits of appellants' appeal in the interest of justice. *See Price v. Short,* 931 S.W.2d 677, 682 (Tex.App.—Dallas 1996, no writ) (addressing merits of waived *Batson* error in interest of justice).

██ An amended pleading supercedes and supplants all previous pleadings. *See* Tex.R. Civ. P. 65; *see also Johnson v. Coca-Cola Company,* 727 S.W.2d 756, 758 (Tex.App.—Dallas 1987, writ refused

n.r.e.). When a party's name is omitted from an amended pleading, he is as effectively dismissed as where a formal order of dismissal is entered. *See Jauregui v. Jones,* 695 S.W.2d 258, 261 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *see also Radelow-Gittens Real Property Management v. Pamex Foods,* 735 S.W.2d 558 (Tex.App.—Dallas 1987, writ ref'd, n.r.e.).

In *Radelow,* the Dallas court of appeals held that Radelow–Gittens waived any error in the trial court's grant of an adverse summary judgment by its subsequent amendment of its petition which dropped claims against Pamex from the action. The court noted that when Radelow proceeded to trial on its third amended petition, at that point in time it had abandoned all of its prior claims against Pamex under the first petition. *See* 735 S.W.2d at 560. The appellate court held that Radelow was therefore precluded from complaining on appeal of the trial court's action in granting the summary judgment in favor of Pamex, and dismissed the appeal. *See id.* The court based its holding on *Dolenz v. All Saints Episcopal Hosp.,* 638 S.W.2d 141, 142 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

In *Dolenz,* a doctor sued a hospital for slander, and sought an injunction restraining hospital personnel from rescinding his staff privileges, and money damages for the slanderous remarks. The hospital moved for partial summary judgment on the claim for injunctive relief. The trial court granted the hospital's motion, and entered judgment against the doctor denying his claim for injunctive relief. After this order, the doctor twice amended his pleadings. The doctor then proceeded to trial on his third amended original petition. In that petition, he dropped all claims related to injunctive relief. At trial, the doctor also lost on his slander claim. The doctor then appealed on both the injunctive relief and the slander claim. The Fort

---

claimed the time spent at Splashtown as compensable working hours, after the broadcast

she changed her timesheet to show this time as vacation.

Worth Court of Appeals held that the doctor had abandoned his claim for injunctive relief when he proceeded to trial on his third amended original petition. The *Dolenz* court stated: "[i]n a situation such as presented, an amended pleading supplants the instrument amended and that which it amends is no longer proper to be considered part of the trial record." *Id.* at 142. Therefore, on appeal, the doctor could not complain of the trial court's action upon his original plea for injunction because that cause of action was abandoned when he went to trial on his third amended original petition. *See id.* at 142.

▉▉▉▉ Both *Dolenz* and *Radelow* address waiver of the right to complain on appeal about a summary judgment where claims denied by the summary judgment were dropped from later amended pleadings. The rule underlying these cases is that a viable complaint on appeal is lost when, following an allegedly erroneous ruling by the trial court on a claim, the plaintiff files an amended pleading abandoning the claim upon which the trial court ruled. The vehicle by which the trial court rules is of no moment—summary judgment, or as here, Rule 13. The key to the appellate waiver is the de jure abandonment of the claim by excluding it from amended pleadings following the adverse ruling. Thus, the analysis in *Dolenz* and *Radelow* is equally applicable here.[3] Here, as in *Radelow*, the trial court granted an adverse, interlocutory judgment against appellants when it struck their claims against Jackson Walker and Bleisch. Also here, as in *Radelow*, following the trial court's dismissal with prejudice of the claims against the appellees, appellants amended their petition by dropping the claims against the attorneys. Finally here, as in *Radelow*, appellants appealed the trial court's judgment, claiming the trial court erred in dismissing the attorneys from the case. Therefore, here, as in *Radelow*, appellants waived any error the trial court may have committed by filing amended petitions that excluded the attorneys.[4]

Waiver is a harsh result, but its application is mandated by our Civil Procedure Rule 65 and established case law. However, appellants' selection of amended pleadings rather than supplementation dictates the result. To this end, the Dallas court of appeals in *Radelow* recognized that Radelow could have pursued its appeal if it had not abandoned its claims against Pamex. If Radelow had filed a supplemental rather than an amended pleading, its claims against Pamex would have been preserved. We agree with the *Radelow* court's observation. Because appellants proceeded on an amended petition that did not include Jackson Walker and Bleisch, the live pleadings at the time sanctions were imposed do not reflect any claims against those two appellees. Thus, the appellants have waived any error concerning the trial court's action striking appellants' claims against Jackson Walker and David Bleisch, and dismissing those claims with prejudice.

## III.

### The Sanctions Order

#### A. *Standard of Review*

---

3. Indeed, the rule also applies where summary judgment motions are amended to exclude certain grounds used in an earlier motion which was denied. Thus, in *Frias v. Atlantic Richfield Co.*, this court relied on Civil Procedure Rule 65 and *Radelow* as support for its holding that where a party filed a summary judgment motion on certain grounds which was denied, then filed a second motion for summary judgment motion on different grounds which was granted, the grounds alleged in the second motion replaced the grounds in the first motion. Under these circumstances, this court held the movant was precluded from appealing the trial court's denial of the first motion. *See* 999 S.W.2d 97, 102 (Tex.App.—Houston [14th Dist.] 1999, pet denied).

4. After the trial court struck appellants' claims against Jackson Walker and Bleisch, appellants superceded their prior pleadings three times with a sixth, eighth and ninth petition, each of which omitted Jackson Walker and Bleisch as party defendants. There was no seventh amended petition.

Turning to the merits of appellants' four points of error challenging the trial court's ruling on the attorney defendants' motion for sanctions, we will review the asserted error using the most deferential standard of review.[5] A trial court's decision to impose sanctions under Texas Rule of Civil Procedure 13 will not be overruled on appeal unless an abuse of discretion is shown. *See Falk & Mayfield L.L.P. v. Molzan,* 974 S.W.2d 821, 824 (Tex.App.—Houston [14th Dist.] 1998, pet. denied); *see also Zarsky v. Zurich Management, Inc.,* 829 S.W.2d 398, 399 (Tex. App.—Houston [14th Dist.] 1992, no writ). The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles," or "whether the act was arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court abuses its discretion in imposing sanctions only if it based its order on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Monroe v. Grider,* 884 S.W.2d 811, 816 (Tex.App.—Dallas 1994, writ denied). To reach a decision on whether the sanctions constitute an abuse of discretion, we examine the entire record. *See id.* at 816. When reviewing a trial court's finding under the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *See Schlager v. Clements,* 939 S.W.2d 183, 191 (Tex.App.— Houston [14th Dist.] 1996, writ denied). Rather, we are limited to determining whether the trial court abused its discretion by (1) acting arbitrarily and unreasonably, without reference to guiding rules or principles,; or (2) misapplying the law to the established facts of the case. *See id.* With the appropriate standard of review in mind, we turn to the trial judge's order striking the appellants' pleadings.

### B. Appellants' Claims Challenged by the Rule 13 Motion

In paragraphs 23 and 24 of their Fifth Amended Original Petition, appellants state:

23. N. David Bleisch is an attorney for Jackson Walker, L.L.P. and in the course and scope of his employment with that firm he accused the Controller, Lloyd Kelley, and his staff of unlawful conduct. Defendant Bleisch did so verbally and in writing. Specifically, Bleisch stated in written correspondence to Kelley that his denial of access to Dolcefino to the Controller's Office in the absence of a compelling governmental interest to the contrary "is unlawful." Furthermore, Bleisch, in a telephone call on speaker phone with Mr. Kelly accused Kelley of doing something unlawful by not interviewing with Mr. Dolcefino. During that telephone conversation there were several members of the Controller's Office staff who were in Mr. Kelley's office who were parties to the conversation and heard the accusation that was made by Bleisch.

24. Upon information and belief, Defendants Bleisch and Jackson Walker, L.L.P. participated in editing and creation of the stories that were defamatory and aired by Defendant Channel 13 and Defendant Dolcefino which caused Plaintiffs harm. Bleisch went outside the scope of his representation of Defendants when he acted as decision maker in actively working on the production of news stories by contacting Kelley and his staff and demanding interviews and access for Mr. Dolcefino to conduct interviews. Furthermore, Henry Florsheim, the General Manager of KTRK,

---

**5.** All four of appellant's appellate issues relate to the propriety of the sanctions order, but we address separately the publication element of defamation at page 12 below.

testified at deposition that Bleisch was present at the editing sessions and meetings regarding the upcoming broadcasts in August of 1997 which are the subject of this suit.

The foregoing two paragraphs constitute all of the claims brought by appellants against Bleisch and Jackson Walker.

### C. Rule 13

Rule 13 provides, in part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion or other paper; that to the best of their knowledge, information and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

\* \* \* \* \* \*

No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

TEX.R. CIV. P. 13.

 Rule 13 authorizes the trial court to impose an appropriate sanction available under Civil Procedure Rule 215.2(b) against an attorney, a represented party, or both, who filed a pleading that is both: (1) groundless *and* brought in bad faith; or (2) groundless *and* brought to harass. *See Monroe*, 884 S.W.2d at 817. The purpose of Rule 13 is to check abuses in the pleading process. *See id.* A party seeking sanctions has the burden of establishing his right to relief. *See GTE Com-*

*munications v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993).

### D. Required Findings under Rule 13

 Appellants contend in their second issue the trial court erred in making factual determinations regarding contested issues in a Rule 13 proceeding. We disagree. Rule 13 requires that if a court finds, after notice and a hearing, that a pleading contains claims that are groundless and either brought in bad faith or for the purpose of harassment, the court shall impose an appropriate sanction available under Texas Rule of Civil Procedure 215.2(b).[6] Because appellees had the burden to establish that sanctions were justified, it was "imperative for the trial court to convene and conduct an evidentiary hearing." *See Karagounis v. Property Co. of America*, 970 S.W.2d 761, 765 (Tex. App.—Amarillo 1998, pet. denied). Here, the trial court concluded that appellants' claims against Jackson Walker and Bleisch were groundless and brought for the purpose of harassment. In support of that conclusion, the trial judge found, as is required by Rule 13, that the claims were groundless (1) because there is no basis, nor is there a good faith argument for, a defamation suit against an attorney for providing consultation to a client during a pre-publication review; (2) and there is no cause of action for defamation against an attorney who makes defamatory statements preliminary to, and in connection with, a proposed judicial proceeding because such statements are absolutely privileged. The trial court properly complied with the requirements of Rule 13:

Rule 13 motions ... require the trial court to make factual determinations concerning whether a party's legal position as stated in the pleadings is substantially justified. Obviously, a trial

---

**6.** An order striking pleadings, or parts thereof, is an appropriate sanction under Rule 215.2(b)(5). In their first appellate issue, appellants contend that striking parts of a pleading is not an available sanction under § 10.004 of the Civil Practice and Remedies code. We agree. However, such a sanction is available under Rule 13. Appellees moved for sanctions under both Chapter 10 of the C.P.R.C. and under Rule 13. Because the sanctions imposed are available under Rule 13, we overrule appellants' first issue.

judge hearing the evidence, examining the credibility of the witnesses, and familiar with the litigation practices of the local bar, is in much better position than an appellate court to determine whether Rule 13 has been violated, especially in "fact intensive close calls."

See *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 888 (Tex. App.—Corpus Christi 1991, no writ).

Thus, the trial court complied with the rule's requirement that the order state the particulars supporting the good cause for which the sanctions were imposed. Because we cannot say the trial court made a clearly erroneous assessment of the evidence, the court did not abuse its discretion in determining facts at the Rule 13 hearing. *See Monroe,* 884 S.W.2d at 816. Our conclusion is guided by this court's decision in *Schlager* that an abuse of discretion is not shown where the trial court bases its decision on conflicting evidence. *See* 939 S.W.2d at 191. Here, the trial court properly resolved contested issues related to whether the claims made in appellants' pleadings were, at the time they were filed, factually well grounded and legally tenable. *See Karagounis,* 970 S.W.2d at 764. Accordingly, we overrule appellants' second appellate issue.

*E. Absolute Privilege—Fifth Amended Petition Paragraph 23*

■ Appellees assert an absolute privilege applies to Bleisch's statements to Kelley because they were made in contemplation of judicial proceedings. However, the absolute privilege claimed by the attorneys "is more properly thought of as an immunity." *Hurlbut v. Gulf Atlantic Life Ins. Co.,* 749 S.W.2d 762, 768 (Tex.1987). In other words, the "absolute privilege is not a defense. Rather absolutely privileged communications are not actionable." *CEDA Corp. v. City of Houston,* 817 S.W.2d 846, 849 Tex.App.—Houston [1st Dist.] 1991, writ denied). Thus, communications subject to this privilege simply "cannot constitute the basis of a civil action," nor may they form a basis for civil

liability. *See Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909, 912 (1942); *see also Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 132 Tex.App.—Houston [14th Dist.] 1994, no writ).

■ The issue of whether an alleged defamatory matter is related to a proposed or existing judicial proceeding is a question of law to be determined by the court. *See Thomas v. Bracey,* 940 S.W.2d 340, 343 (Tex.App.—San Antonio 1997, no pet.); *see also Russell v. Clark,* 620 S.W.2d 865, 870 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). All doubt should be resolved in favor of the communication's relation to the proceeding. *See id.*

"It is a verity of life that all things human, including lawsuits, have a beginning and end. These two aspects define the thing involved, and in defining it, they are inextricably related to and become a part of it." *Bennett v. Computer Associates Intern., Inc.,* 932 S.W.2d 197, 201 (Tex.App.—Amarillo 1996, writ denied). Courts have deemed conduct related to the initiation of a suit as sufficiently related to a judicial proceeding and, therefore, absolutely privileged. *See Thomas,* 940 S.W.2d at 343 (holding demand letter written prior to and during litigation absolutely privileged); *see also Russell,* 620 S.W.2d at 868 (holding letter to investors seeking evidence to use in pending litigation absolutely privileged); *see also Kanengiser v. Kanengiser,* 248 N.J.Super. 318, 590 A.2d 1223, 1231 (New Jersey App.1991) (holding that statements typically found in an attorney's demand letter related to an imminent judicial proceeding absolutely privileged).

The public policy behind absolute privilege as it relates to attorneys representing clients in a pending or contemplated proceeding was noted by the court in *Russell:*

Public policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to

pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. *Russell*, 620 S.W.2d at 868 (cited in *Thomas*, 940 S.W.2d at 343).

■ Here, the alleged defamatory statements were made in one letter and a telephone call between Bleisch and Kelley. In the letter, Bleisch stated "[a] public entity's denial of access to a particular member of the media in the absence of a compelling governmental interest to the contrary is unlawful."[7] In the telephone call, Bleisch allegedly accused Kelley of violating Texas Open Records Act by refusing equal access to Dolcefino.[8] We agree with the appellees that these statements were directly related to a contemplated judicial proceeding, and thus are part of a proposed judicial proceeding, which is the "beginning" so eloquently described in *Bennett.* Accordingly, we hold the statements at issue are absolutely privileged. *See Thomas*, 940 S.W.2d at 343.

In *Thomas*, the trial court found that a statement written in a letter to the plaintiff, by the defendant's attorney, and published to a third party, was made in connection to pending, as well as to proposed, litigation. *See id.* at 343–44. The pending litigation was an aggravated assault action brought when the plaintiff threatened a third party with a gun. The proposed litigation, alluded to in the letter, however, was instituted two months after the letter was written. Here, as in *Thomas*, Bleisch clearly stated he was writing the letter on behalf of his client, KTRK Television, and was doing so in an effort to secure his client's legal rights. Further, at the hear-

ing on the appellees' motion for sanctions, the appellees submitted Dolcefino's affidavit, in which he stated, "[i]t was my anticipation on July 30, 1998 [the date the allegedly defamatory letter was written], and it was the anticipation of KTRK, that if the City Controller's office continued to stonewall us, it might be necessary to file suit to obtain our rightful access."

Thus, the evidence demonstrates Bleisch's statements to Kelley were made during the course of his representation of his clients and preliminary to a proposed judicial proceeding. Therefore, the trial court did not abuse his discretion by concluding the claim was groundless, based on the absolute privilege afforded attorneys in these circumstances. Point of error four is overruled.

We will also address appellants' third point of error regarding publication of Bleisch's allegedly defamatory statements at this juncture because the issue can be disposed of easily.

### (1). The Letter

■ The July 30, 1997 letter from Bleisch to Kelley set out the law as articulated in *Curtis.* That sentence was the allegedly defamatory statement in the letter. However, that sentence is true. The truth of a defamatory statement is an affirmative defense. *See M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 633–34 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Here, Jackson Walker, pursuant to Civil Procedure Rule 94, filed an answer to appellants' Fifth Amended Original Petition pleading the truth of the statement. Further, two days after the allegedly defamatory letter was sent by

---

7. This is a correct statement of the law. Under Texas case law, a public official may not constitutionally deny to one media access that is enjoyed by other media, because one media is entitled to the same right of access as any other, and the media denied access may seek legal redress for the alleged abridgement of a constitutionally guaranteed right. *See Southwestern Newspapers v. Curtis*, 584 S.W.2d 362, 365 (Tex.Civ.App.—Amarillo 1979, no writ).

8. *This statement also reflects the equal access required by Curtis. See also* Tex. Gov't Code Ann. § 552.223 (Vernon Supp.2000) ("The officer for public information or the officer's agent shall treat all requests for information uniformly without regard to the position or the occupation of the requestor, the person on whose behalf the request is made, or the status of the individual as a member of the media.")

facsimile to Kelley, Bleisch sent another letter to David Hagey, Deputy Controller, City of Houston, explaining to him that the basis of the statement in the July 30 letter was the opinion in *Curtis.* Inasmuch as the allegedly offensive statement in the July 30 letter was an absolutely correct statement of the law, and the basis therefor was affirmatively demonstrated for the trial court and appellants, Bleisch cannot be liable for making the statement in the July 30 letter to Kelley. *See Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995) (stating that truth is a complete defense to defamation). Because the truth of the statement bars liability for the statement, whether or not the letter was published is of no moment.[9]

### (2). The Telephone Conversation

It is not entirely clear from the record before this court, but there is evidence to support the conclusion that the telephone conversation between Bleisch and Kelley occurred on the same day the controller's office received Bleisch's letter by facsimile. Both Bleisch and Kelley described the nature of that conversation. There appear to be several important aspects of that conversation. First, Kelley asserts in his affidavit that the call was on a speaker phone, and that Messrs. Hagy and Stevens heard the entire conversation. He also stated that Bleisch never mentioned litigation or any legal proceeding. Bleisch stated in his deposition that he did not threaten anyone during the telephone conversation, that the discussion focused on the letter and the authority for the statement, and that he did not advise Kelley that he had to interview with Dolcefino.

We have already held that the statements Bleisch made to Kelley, in print and in the telephone conversation, were related to a contemplated judicial proceeding. Bleisch in his deposition and Dolcefino in his affidavit affirmatively and clearly stated that if the controller's office persisted in denying access to KTRK, legal proceedings to gain access were contemplated. Thus, the statements are absolutely privileged. Where, as here, communications are protected by the absolute privilege, those communications may not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *See Thomas,* 940 S.W.2d at

---

**9.** Appellants' brief contains the following assertion without any citation to the record: "The [July 30] letter was seen by numerous employees of the City of Houston, including Bill Stevens, David Hagy, and the City Attorney." This failure violates the clear mandate of appellate procedure rule 38.1(h) which requires the argument in a brief to contain citations to the record. *See* Tex.R.App. P. 38.1(h). Nevertheless, because we found a single sentence in Kelley's affidavit that "All correspondence I received from Mr. Bleisch and details of his conversation were relayed to the city Attorney's Office according to the City's policies and procedures," we will address the issue of publication as to the letter. The Texas Supreme Court long ago addressed this issue and held that if the publication of which the plaintiff complains was consented to, authorized, invited or procured by the plaintiff, he cannot recover for injuries sustained by reason of the publication. *See Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770, 772(1945). In *Lyle,* the plaintiff had asked her physician to write a letter to her describing her treatment so that it could be shown to her new physician in the Greenville area to which she was moving. The first physician complied with her request. The plaintiff sued for libel because the treatment described in the letter indicated to any physician she had a loathesome disease, and when the letter was exhibited to her Greenville physician, it was a libelous publication by the defendant. There, as here, the letter was not addressed to any third party, but was only addressed to the plaintiff. There, as here, the plaintiff had control of the letter. And there, as here, the plaintiff voluntarily disclosed the letter to another.

The *Lyle* Court concluded that where disclosure to a third party is accomplished by the plaintiff, publication was by the plaintiff. The court held that where publication of the allegedly defamatory matter was effected by the plaintiff, and not by the defendant, a cause of action does not accrue in favor of the plaintiff. *Id.* It follows, therefore, that Kelley has no libel claim against Jackson Walker based on the July 30 letter because publication was accomplished by Kelley.

342–43. It follows that when a statement is so protected, publication of the statement does not defeat the privilege. *Id.* at 344. Accordingly, we overrule appellants' third appellate issue.

### F. Pre–Publication Review—Fifth Amended Petition Paragraph 24

As noted above, in cause number 14–99–00026–CV, this Court reversed and rendered judgment for the media defendants on Randolph and Kelley's defamation claims. Because this Court held that a defamation claim will not lie against the media defendants, *a fortiori* that same claim could not lie against the attorneys who advised them. Even if we ignore this court's June 8, 2000 opinion in cause number 14–99–00026–CV, there is simply no basis in law for a suit against the attorneys representing the media defendants for their pre-publication discussions of the allegedly defamatory news reports. *See Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (holding communications between corporate counsel and corporation's employees made for the purpose of rendering legal advice protected by attorney-client privilege); *see also Liberty Lobby, Inc. v. Dow Jones & Co., Inc.,* 838 F.2d 1287, 1302 (D.C.Circ.1988) (holding pre-publication discussions between libel counsel and reporters as fitting "squarely within the scope of the privilege as defined in *Upjohn* ").

▇ Moreover, there can be no claim against a lawyer who allegedly wrongly advised another party, thus leading to the other party's alleged defamatory statements. *See Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 624 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Any such claim based on wrongful advice supplied by the attorney rests with the wrongly advised party itself. *Id.* Appellants have no standing to sue the attorneys for the advice given to their clients. Accordingly, based on the foregoing, we hold the trial court did not abuse its discretion in finding that the defamation claims against the attorneys were groundless.

### G. Harassment

▇ Before granting a motion for sanctions, Rule 13 requires that the trial judge find the claim is groundless and was brought in bad faith or for the purpose of harassment. The doctrine of absolute privilege and the bar precluding attorney liability for the allegedly defamatory acts of their clients dispose of the groundless prong; however, other evidence must be shown to demonstrate the bad faith or harassment. *See Molzan,* 974 S.W.2d at 824 (noting bad faith established by the testimony of two witnesses as to other frivolous suits filed by the appellants). Here, the trial judge found the suit was brought for the purpose of harassment in order to "disrupt the attorney client relationship." Evidence adduced at the sanctions hearing supports this finding.

At the hearing, Charles Babcock, attorney for the appellees, called Ronald Cohen, attorney for Randolph and Kelley, to the stand. During Cohen's testimony, the following exchanges occurred:

Q. (Babcock) Did you not have a conversation with me in the hallway this morning where you said that if we would withdraw from the case, you would drop Jackson walker and Mr. Bleisch?

A. (Cohen) No. Why don't you tell the ... entire conversation, Mr. Babcock? You asked me if I would drop my pleadings, and then I answered to you, *if you would withdraw.* That was my—that was our conversation, Mr. Babcock.(emphasis added).

\* \* \* \* \* \* \*

Q. (Babcock) Okay. Mr. Cohen, what is your recollection of what I said to initiate the conversation?

A. (Cohen) You asked me if we filed a Response to the Motion, because you had not gotten it yet. And I said, "Well, we sent it certified mail."

Q. All right.

A. I said, I will try to get you a copy. I think you asked me for a copy or I said I would try to get you a copy of it.

Q. Right.

A. Then you stated to me: "Would you drop your—do you want to drop your complaint against Jackson & Walker?" Or something to that effect.

Q. Correct.

A. And I said, "Why? Do you want to get off the case?" or something to that effect. And my answer was in response to you asking me to drop my claim against you.

\* \* \* \* \* \* \*

Q. (Babcock) So you think it would be inappropriate for Jackson & Walker to continue so long as they are defendants in the lawsuit; correct?

A. (Cohen) I believe so.

The trial judge stated during the hearing that she believed this line of questioning went to Cohen's motive for joining Bleisch and Jackson Walker as defendants. We agree. This evidence constitutes some evidence of harassment, namely that the appellants filed suit against the appellees' attorneys to pressure them into withdrawing [10] from their representation. Based on this evidence, the trial judge did not commit an abuse of discretion by finding the claims against the attorneys were both groundless and filed for the purpose of harassment. Therefore, appellants' points of error challenging the trial court's sanctions are overruled.

We affirm the judgment of the trial court.

---

**10.** Under Rule 3.08 of the Texas Rules of Professional Conduct, attorneys should withdraw as counsel to a client if they will be called as witnesses. *See Spain v. Montalvo,* 921 S.W.2d 852, 859–60 (Tex.App.—San Antonio 1996, orig. proceeding).