Appellee=s Motion for Rehearing Granted in Part and Overruled in Part;
Opinion Issued July 18, 2002 Withdrawn; Affirmed in Par









Appellee=s Motion for
Rehearing Granted in Part and Overruled in Part; Opinion Issued July 18, 2002
Withdrawn; Affirmed in Part, Reversed and Remanded in Part, and Opinion on Motion for Rehearing filed December 19,
2002.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00099-CV

_______________

 

BETTE ROSE SCHWAGER, Appellant

 

V.

 

TELECHECK SERVICES, INC. D/B/A
TELECHECK, A FIRST

DATA COMPANY; FIRST DATA CORPORATION; CLAY SPITZ;

JIM SIKORSKI; STEVE SHAPER; and LORI GRAESSER, Appellees

___________________________________________________________________

 

On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No.  99-00043

___________________________________________________________________

 

O P I N I O N  
O N   M O T I O N

F O R   R E H E A R I N G

 

Appellee=s motion for rehearing is granted in
part and overruled in part; the opinion issued in this case on July 18, 2002,
is withdrawn; and the following opinion is issued in its place.








In
this employment dispute, Bette Rose Schwager appeals
a summary judgment in favor of TeleCheck Services,
Inc. d/b/a TeleCheck, A First Data Company (ATeleCheck@), First Data Corporation (AFirst Data@), Clay Spitz, Jim Sikorski, Steve Shaper, and Lori Graesser
on various grounds.  We affirm in part
and reverse and remand in part.




Background

Schwager filed a lawsuit against TeleCheck,
her former employer, First Data, TeleCheck=s parent company, and TeleCheck executives Sikorski,
Spitz, Shaper, and Graesser, asserting claims for
breach of contract, fraud, conversion, wrongful termination, defamation,
constructive fraud, and intentional infliction of emotional distress.[1]  Appellees moved
for, and were granted, summary judgment on all of Schwager=s claims.

Standard
of Review

A
traditional summary judgment may be granted if the motion and summary judgment
evidence show that, except as to the amount of damages, there is no genuine
issue of material fact and the moving party is entitled to judgment as a matter
of law on the issues expressly set out in the motion or response.  Tex.
R. Civ. P. 166a(c).  A Ano-evidence@ summary judgment may be granted if
the moving party contends that there is no evidence of one or more essential
elements of a claim on which the non-movant has the
burden of proof at trial and the non-movant fails to
produce summary judgment evidence raising a genuine issue of material
fact.  Id. 166a(i).  In reviewing a
summary judgment, we take all evidence as true, make all reasonable inferences,
and resolve any doubts, in the non-movant=s favor.  Southwestern Elec. Power Co. v. Grant, 73
S.W.3d 211, 215 (Tex. 2002).




                                           Inadequate
Opportunity for Discovery

Schwager=s first issue[2]
contests the summary judgment on the ground that her request for continuance
was outstanding and discovery was totally inadequate.  Schwager requested
a continuance in her response to appellees= motion for summary judgment and
contends  that the trial court ignored it
even though appellees failed to produce documents and
persons for deposition and committed other discovery abuses and fraud.  

A
summary judgment respondent complaining of an inadequate opportunity for
discovery must file either an affidavit or verified motion for continuance,
explaining the need for further discovery.[3]  Schwager=s request for a continuance, set
forth only in a paragraph of her unverified summary judgment response, and not
supported by her affidavit or other summary judgment evidence, did not satisfy
this requirement.

Moreover,
the reasons given in Schwager=s response for requesting a
continuance were that: (1) the case was fraught with (unspecified) discovery
disputes and appellees failed to produce much of the
requested (unspecified) information which would provide evidence of Schwager=s claims; and (2) Schwager spent
six months on appellees= removal  of the case to federal court and remand.  However, in that the case had been on file
for more than 19 months before the summary judgment hearing, it would have been
within the trial court=s discretion[4]
to deny her request for continuance even if the foregoing unsubstantiated
contentions had been set forth in an affidavit or sworn motion.  Accordingly, the first issue is overruled.

                                              Objections
to Appellees= Affidavits

Schwager=s second issue contests the summary
judgment on the ground that appellees= three affidavits were false,
misleading, and conclusory, and omitted material
facts.  This issue further asserts that
perjury should be assigned to those affidavits. 
Except as to the contention of conclusoriness,
these assertions are well beyond the scope of our review of a summary judgment
and will not be considered further. 
Regarding the alleged conclusory nature of the
affidavits, to the extent we can identify the statements claimed to be conclusory,[5]
they are not material to any of the grounds on which we are affirming the
summary judgment. Accordingly, this issue is overruled.

                                                    Affirmative
Defense of Fraud

Schwager=s third issue contests the summary
judgment on appellees= affirmative defense of fraud on the
grounds that appellees failed to raise an issue of
fact on each element of fraud, Sikorski=s affidavit was false, and the
documents in support of his affidavit show that Sikorski
committed fraud.  However, an affirmative
defense of fraud was not a ground upon which TeleCheck=s motion sought summary
judgment.  Therefore, issue three
presents nothing for our review and is overruled.

                                                             Schwager=s Claims

Schwager=s fourth issue contests the summary
judgment on her causes of action for breach of contract, fraud, constructive
fraud, conversion, wrongful termination, defamation, and intentional infliction
of emotional distress.  We address these
sub-issues in turn.

                                                             Breach
of Contract

Appellees= motion for summary judgment asserted
that Schwager=s breach of contract claim failed
because she was paid the commissions she was due under her 1997 written
compensation agreement (the A1997 agreement@).[6]  In challenging the summary judgment on this
claim, Schwager asserts: (1) TeleCheck
did not pay her the entire five percent commission required by a 1993 oral
compensation agreement (the A1993 agreement@), a 1994 written compensation
agreement (the A1994 agreement@), and the 1997 agreement
(collectively, the Acompensation agreements@); (2) the determination of which of
these agreements governs the allegedly unpaid commissions is a question of
fact; (3) the 1997 agreement fails for lack of mutuality and consideration.[7]

Taking
the foregoing contentions slightly out of order, the 1994 and 1997 agreements
each state, A[a]s of the effective date, the
following plan will cover the full compensation package provided by [TeleCheck] . . . to [Schwager].@[8] 
By this language, each agreement superseded the preceding agreement
pertaining to Schwager=s compensation from TeleCheck.  As TeleCheck asserted in its reply to Schwager=s summary judgment response and on
appeal, because this language of the agreements is unambiguous, extrinsic
evidence was not admissible to show a contrary intent.  See Nat=l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d
517, 521 (Tex. 1995).  Therefore, Schwager has not demonstrated that the determination of
which compensation agreement governs each of the allegedly unpaid commissions
is a question of fact.

Schwager further contends that the compensation agreements lacked
mutuality and consideration because they were subject to change at any time by TeleCheck.  However,
the fact that her compensation agreements were subject to change at any time by
TeleCheck does not prevent them from being
enforceable.  See Hathaway v. Gen.
Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986).  By signing the compensation agreements, acknowledging
her awareness of the changes in the terms of her compensation arrangement, and
then continuing her employment with that knowledge, Schwager
accepted and became bound by those changes as a matter of law.  See id.  Following her performance of the specified
tasks, TeleCheck became obligated to pay her the
corresponding compensation.  Therefore, Schwager has demonstrated no lack of mutuality or
consideration.

However,
with regard to the amount of commissions, the summary judgment evidence
contains conflicting (and conclusory) affidavits as
to whether Schwager received the commissions she was
owed under the compensation agreements.[9]  In addition, the summary judgment evidence
motion, responses, and evidence do not enable us to conclusively determine the
correct amount or division of commissions. 
Therefore, a fact issue remains, and Schwager=s challenge to the summary judgment
is sustained to this extent.

                                                                         Fraud

Schwager alleged that TeleCheck committed
fraud by promising to pay her the commissions due under the compensation
agreements with the intent not to do so. 
TeleCheck=s motion for summary judgment
asserted that Schwager had no evidence that it made
any promises with no intent to perform them.

A
promise of future performance constitutes an actionable misrepresentation if
the promise was made with no intention of performing at the time it was
made.  Formosa Plastics Corp. v.
Presidio Eng=rs and Contractors, Inc., 960 S.W.2d 41, 48 (Tex.
1998).  However, the mere failure to
perform a contract is not evidence of fraud. 
Id.  Moreover, the evidence
must be relevant to the promisor=s intent at the time the
representation was made.  See id.

In
this case, Schwager=s summary judgment response asserted
that TeleCheck=s intent not to perform could be
inferred from its breach of the compensation agreements and outrageous conduct
in response to her inquiries regarding commissions.  However, her response referenced no specific
evidence.  Moreover, the alleged breach
of the agreements is not itself evidence of an intent not to perform, and
unspecified outrageous conduct in response to her inquiries is not probative of
TeleCheck=s intent at the time the agreements
were entered.  Accordingly, we overrule
her challenge to the summary judgment against her fraud claim.

                                                             Constructive
Fraud

Schwager=s petition alleged that, as her
employer, TeleCheck committed constructive fraud by:
(1) not fully disclosing the ramifications of, or dealing openly with her
regarding, her compensation agreements; (2) breaching its fiduciary duty by
refusing to pay her agreed commissions; (3) telling her that she could not keep
her job if she did not sign the 1997 agreement; and (4) giving her no adequate
consideration to sign the 1997 agreement. 
TeleCheck=s motion for summary judgment
asserted that it could not be liable to Schwager for
constructive fraud because no fiduciary duty exists between an employer and
employee, as alleged in this case.

Constructive
fraud is a breach of some legal or equitable duty that the law declares
fraudulent because it tends to deceive others, violate confidences, or injure
public interests; and most often arises in a breach of a fiduciary or
confidential relationship.  Vickery v.
Vickery, 999 S.W.2d 342, 377 (Tex. 1999). 
Fiduciary duties arise as a matter of law in certain formal
relationships, such as attorney-client, partnership, and trustee
relationships.  Ins. Co. of N. Am. v.
Morris, 981 S.W.2d 667, 674 (Tex. 1998). 
Confidential, or informal fiduciary, relationships may arise when
parties have dealt with each other in such a manner for a long period of time
that one party is justified in expecting the other to act in her best
interest.  Id.; Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276,
287-88 (Tex. 1998).

A
fiduciary duty encompasses a duty of good faith and fair dealing, but is a
greater duty in that it requires the party with that duty to place the
interests of the other party above his own. 
See Crim Truck & Tractor
Co. v. Navistar Int=l Transp.
Corp., 823 S.W.2d
591, 594 (Tex. 1992).  There is no duty
of good faith and fair dealing in the employment context.  City of Midland v. O=Bryant, 18 S.W.3d 209, 216 (Tex. 2000).  Therefore, it follows that there is no formal
or informal fiduciary duty in the employment context such as in this case.

Although
not alleged in her petition, Schwager=s summary judgment response and
affidavit asserted that TeleCheck had a fiduciary or
confidential relationship with her because she had relied on appellees to correctly calculate, inform her of, and pay
her the commissions she was due.[10]  Although the existence of a confidential
relationship is usually a question of fact, it becomes a question of law when
the issue is one of no evidence.  Crim Truck, 823 S.W.2d at 594.  A confidential relationship is not created
lightly.  Associated Indem., 964 S.W.2d at 288.  Because every contract includes an element of
confidence and trust that each party will perform faithfully, a confidential
relationship is not created by the fact that one party trusts and relies upon
the other or that the relationship has been a long and cordial one.  Crim.
Truck, 823 S.W.2d at 594-95.  Not
even every relationship involving a high degree of trust and confidence rises
to the stature of a fiduciary relationship. 
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176-77 (Tex.
1997).  To impose an informal fiduciary
duty in a business transaction, the special relationship of trust and
confidence must exist prior to, and apart from, the agreement made the basis of
the suit.  Associated Indem. 964 S.W.2d at 288.

Under
the foregoing legal standards, the facts relied upon by Schwager
to evidence a confidential relationship with TeleCheck
fail as a matter of law to do so.[11]  Therefore, we overrule her challenge to the
summary judgment against her claim for constructive fraud.

                                                                    Conversion

Schwager=s petition alleges conversion in that
Sikorski took a portion of her commissions and
claimed it as his own and other TeleCheck executives
failed to correct this problem after being made aware of it.  TeleCheck=s motion for summary judgment
asserted that unpaid commissions are not subject to a cause of action for
conversion.

Conversion
is the wrongful exercise of dominion and control over another=s property in denial of or
inconsistent with his rights.  Green Int=l, Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997).  Money is subject to conversion only when it
can be identified as a specific chattel, and not where an indebtedness may be
discharged by the payment of money generally.[12]  Thus, an action for conversion of money will
lie where the money is: (1) delivered for safekeeping; (2) intended to be kept
segregated; (3) substantially in the form in which it is received or an intact
fund; and (4) not the subject of a title claim by its keeper.[13]  Therefore, withholding
or diverting funds from commissions owed does not support a claim for
conversion.[14]

Schwager challenges the summary judgment against her conversion claim
on the ground that the unpaid commissions are a specific and identifiable sum
of money as reflected on the commission reports prepared by TeleCheck.  However, it is not the sum or amount of money
that must be identifiable but the specific funds from which that sum must be
paid.[15]  Although Schwager=s compensation agreements provide
that her commissions are measured by a percentage of certain TeleCheck revenues, they do not specify any particular body
of funds from which those commissions must be paid.  Therefore, we overrule Schwager=s challenge to the summary judgment
against her conversion claim.

                                                          Wrongful
Termination

Schwager=s petition alleged that she was
terminated wrongfully in retaliation for, or discrimination of, her physical
disability.[16]  TeleCheck=s motion for summary judgment
asserted that Schwager=s claims for wrongful termination
were barred because: (1) there is no common law claim for wrongful termination
of an at-will employee; (2) her discrimination claims were either not timely
asserted or outside the scope of the complaints she filed with the Texas
Commission on Human Rights (ATCHR@) and the Equal Employment Opportunity Commission (AEEOC@). 
In challenging the summary judgment against her wrongful termination
claim, Schwager asserts that: (1) she has both a
statutory and common law discrimination or retaliation claim; and (2) a fact
issue exists whether her termination was for good cause, i.e., a
non-discriminatory or retaliatory reason.

A
complaint of unlawful employment practices must be filed with the EEOC or TCHR
within 180 days after the unlawful practice occurrs.  Tex.
Lab. Code Ann. ' 21.202(a) (Vernon 1996); Specialty Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996). This
requirement is mandatory and jurisdictional. 
Specialty Retailers, 933 S.W.2d at 492.  The 180 days begin to run when the employee
is informed of the allegedly discriminatory employment decision, not when that
decision comes to fruition.  Id.
at 493.

In
this case, the only EEOC or TCHR complaint in the summary judgment evidence was
signed by Schwager on February 10, 1998.  It states that she had been denied a
reasonable accommodation and prevented from continuing her employment since
April 16, 1997.  To the extent the
complained of employment practice began at that time and continued without
change, as the complaint indicates, the complaint was required to be filed
within 180 days of that time.  However,
it was instead filed nearly ten months later, and no other complaint was filed
alleging any subsequent discriminatory act, such as her termination. Although Schwager contends that the jurisdictional requirement for
her statutory discrimination claim was nevertheless satisfied by filing a
complaint with the EEOC within 300 days, she has not cited any authority
allowing 300 days to file a complaint with the EEOC or any evidence of when her
complaint was actually filed with the EEOC. 
Therefore, we overrule her challenge to the summary judgment against her
statutory discrimination claim.

With
regard to Schwager=s common law discrimination claim, we
agree with appellees that she has not shown that a
common law claim for wrongful termination of an at-will employee exists except
under Sabine Pilot,[17]
which Schwager did not assert.  Accordingly, we overrule Schwager=s challenge to the summary judgment
against her common law discrimination claim.

                                                                    Defamation

Schwager alleged that Graesser defamed her
in a letter (the Aletter@) by falsely accusing Schwager of
theft, fraud, unlawful activity, extortion, and lying.  TeleCheck=s motion for summary judgment
asserted that the statements in the letter were protected by the judicial
proceeding privilege and were true or substantially true.  Schwager=s summary judgment response asserted
that the privilege did not apply because there was no pending or threatened
judicial proceeding and that the truthfulness of the statements was a fact
issue.








Communications
made in any aspect of a judicial proceeding will not serve as a basis for a
civil action for defamation, regardless of the negligence or malice with which
they are made.  James v. Brown,
637 S.W.2d 914, 916-17 (Tex. 1982).  This
privilege extends to an attorney=s statements made in contemplation of
and preliminary to judicial proceedings. 
Watson v. Kaminski, 51 S.W.2d 825, 827 (Tex. App.CHouston [1st Dist.] 2001, no pet.); Randolph
v. Walker, 29 S.W.3d 271, 278 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  Whether a statement relates to
a proposed or existing judicial proceeding is a question of law.  Watson, 51 S.W.2d at 827; Randolph,
29 S.W.3d at 278.  All doubt should be
resolved in favor of the communication=s relation to the proceeding.[18]

In
this case, at the time the letter was sent, there is no evidence that Schwager had filed a lawsuit against TeleCheck
or expressly threatened to do so. 
However, before the letter was sent, Schwager
had filed a formal discrimination complaint, which is a prerequisite to a
lawsuit for statutory discrimination,[19]
Schwager=s attorney had requested that
communication with Schwager be made through his
office, and attorneys for the two sides had been in ongoing communication
regarding Schwager=s claims.  Moreover, in accordance with the request to
direct communications to her lawyer, the letter was sent by Graesser,
an attorney for TeleCheck, to Schwager=s lawyer, communicating that Schwager was being terminated and stating TeleCheck=s reasons for doing so. 
This lawsuit relates directly to the matters in dispute between the
parties at the time the letter was sent and to which the letter pertained.  In light of the increasingly adversarial
relationship that had developed between them, their resort to legal counsel,
the filing of a formal complaint and ultimately a lawsuit,  there can be little doubt that a judicial
proceeding was reasonably contemplated at the time the letter was sent, and any
such doubt must be resolved in favor of the letter relating to the subsequent
proceeding.  Therefore, the statements in
the letter were subject to the judicial proceeding privilege, and Schwager=s challenge to the summary judgment against her defamation
claim is overruled.

                                        Intentional
Infliction of Emotional Distress

Schwager argues that she is entitled to a claim of intentional infliction
of emotional distress because: (1) what is utterly intolerable in a civilized
community is a question for the jury; (2) Sikorski=s abusive conduct toward her was
extreme and outrageous and caused her great stress in her job which resulted in
depression, anxiety, headaches, and upset stomach.  TeleCheck=s motion for summary judgment
asserted that, even if Schwager=s allegations were true, they did not
rise to the required levels of outrageousness of conduct or severity of
emotional distress.

To
support a claim for intentional infliction of emotional distress, a defendant=s conduct must: (1) be intentional or
reckless; (2) be extreme and outrageous; and (3) cause the plaintiff to suffer
severe emotional distress.  Bradford
v. Vento, 48 S.W.3d 749, 758 (Tex. 2001). 
Whether a person=s conduct is Aextreme and outrageous@ is a question of law.  Id.  To satisfy this element, conduct must be so
outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency and to be regarded as atrocious, and utterly intolerable in a
civilized community.  Id.  It is the severity and regularity of
conduct that determines whether it is extreme and outrageous.  GTE Southwest, Inc. v. Bruce, 998
S.W.3d 605, 617 (Tex. 1999).  In
addition, emotional distress must be the intended or primary consequence of the
defendant=s conduct.  Id. at 611.  Accordingly, this tort does not lie for
ordinary employment disputes, and the kind of extreme conduct necessary to even
raise a fact question of intentional infliction in the workplace exists only in
the most unusual circumstances.  City
of Midland, 18 S.W.3d at 217. 
Although generalizations are difficult, it appears from the Supreme
Court=s opinion in GTE that
insulting or vulgar behavior in the workplace is not extreme and outrageous
unless it reflects a pattern of physically threatening or grossly abusive
conduct intended primarily to humiliate or terrorize an employee.  See 998 S.W.2d at 611-17.

In
support of Schwager=s allegation of extreme and
outrageous conduct in this case, her summary judgment response asserts:

Schwager=s supervisor, Jim Sikorski,
not only yelled and screamed at her on a frequent basis, but humiliated her in
front of her co-workers.  Mr. Sikorski was abusive in telling Mrs. Schwager
that other women were Acunts.@ 
Mrs. Schwager told Mr. Sikorski
that she did not like him referring to women by that name and that it made her
extremely upset when he would use that type of language. . . .  Mr. Sikorski also
cursed and yelled at Mrs. Schwager regarding her job
performance. . . .  On one occasion, Mr. Sikorski even said, AFuck you for all the shit you have
caused.  You either go to Denver or you
are fired.@

Although these
allegations are supported by Schwager=s affidavit and are unquestionably
objectionable, they do not rise to the level of extreme and outrageous conduct
necessary to support a claim for intentional infliction of emotional distress
according to our reading of GTE. 
Therefore, Schwager=s challenge to the summary judgment
against that claim is overruled.

Accordingly,
the trial court=s judgment is affirmed as to all of Schwager=s claims against appellees
except the portion of her breach of contract claim against TeleCheck
relating to whether Schwager has been paid the amount
of commissions to which she is entitled under the respective compensation
agreements, which portion of the summary judgment is reversed and remanded to
the trial court for further proceedings.

 

/s/        Richard H. Edelman

Justice




 

Judgment rendered
and Opinion filed December 19, 2002.

Panel consists of
Justices Yates, Edelman, and Draughn.[20]

Do Not Publish C Tex.
R. App. P. 47.3(b).

 

 











[1]           Although
Schwager=s second
amended petition also asserted negligence and tortious
interference claims, that petition was later struck by the trial court as being
untimely filed, and Schwager does not assign error to
that ruling.  Therefore, we do not
address her negligence and tortious interference
claims.





[2]           Because
the discussion of the issues in Schwager=s brief is rambling, disjointed, and multifarious, we
will confine our consideration to what we can discern as the thrust of each
issue.





[3]           See
Tex. R. Civ.
P. 166a(g) (AShould it appear from the affidavits of a party
opposing the motion that he cannot for reasons stated present by affidavit
facts essential to justify his opposition, the court may . . . order a
continuance to permit . . . discovery to be had . . . .@); id. 251 (Anor
shall any continuance be granted except for sufficient cause supported by
affidavit, or by consent of the parties, or by operation of law.@); id. 252 (AIf the
ground of such application [for continuance] be the want of testimony, the
party applying therefor shall make affidavit that
such testimony is material, showing the materiality thereof, and that he has
used due diligence to procure such testimony, stating such diligence, and the
cause of failure, if known;  that such
testimony cannot be procured from any other source . . . .@); Tenneco Inc. v. Enter. Prods. Co., 925
S.W.2d 640, 647 (Tex. 1996) (holding that where party complaining of inadequate
opportunity for discovery failed to file affidavit or verified motion for
continuance explaining need for discovery, it was within trial court=s discretion to deny more time).





[4]           See
Gen. Motors Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex. 1997) (reviewing
denial of properly requested motion for continuance for abuse of discretion).





[5]           The
discussion of this issue in Schwager=s brief contains the following
contentions regarding the conclusory nature of TeleCheck=s affidavits:

[Regarding the statement in Sikorski=s affidavit that Schwager
was paid all the commissions owed to her under the 1997 agreement:]  The fact that Sikorski
did not state the dates that Schwager entered into
the 1994 and 1997 agreement [sic] proves the false and conclusionary
[sic] nature of this statement.  There is
no written authorization in the record of this case that anyone is entitled to
any of Schwager=s sales
commissions.  Sikorski=s refusal to be specific in this paragraph also proves
that this statement is false and conclusionary. . . .

[Regarding other portions of Sikorski=s affidavit:]  Sikorski=s affidavit is false and conclusionary
in his statements that Schwager was restricted from
performing the essential functions of her job, that the 1997 Sales Compensation
Agreement between Schwager and TeleCheck,
Inc. completely superceded [sic] and replaced the 1994 Agreement, and that Schwager violated company policy.  Sikorski=s statement that Schwager=s actions violated company policy is not admissible as
it is conclusionary. . . .

[Regarding the statement in Spitz=s affidavit that Schwager
could not perform the essential functions of her position:]  The statement is false and conclusionary and is self-contradictory.  Spitz had no knowledge that Schwager could not perform the essential functions of her
position, as he did not know what they were. . . .

[Regarding
the Sikorski, Spitz, and Graesser
affidavits generally:] Schwager objects to the Trial
Court considering as evidence the preceding affidavits.  Assumptions and conclusions unsupported by
factual evidence is [sic] not proper summary judgment evidence.





[6]           This
was a traditional, rather than no-evidence, ground for summary judgment.





[7]           Schwager also asserts that novation
is not a valid basis for summary judgment because appellees
failed to plead it as an affirmative defense and they did not admit to a debt,
fraud, breach of contract, and conversion. 
However, because it is not material to our disposition regarding the
breach of contract claim, we do not address her challenge regarding novation.





[8]           The
1997 agreement further provides, AThis
Plan supersedes any and all Plans between Employee and the Company prior to the
effective date of this plan.@





[9]           Sikorski=s affidavit stated, ASchwager
was paid all of the commissions owed to her under the terms of the 1997
Agreement, through her last day of work.@  Schwager=s affidavit stated: AThrough
my review of the TRS Sales Commission Reports, provided by Telecheck
in this litigation, I have determined that I was not paid the full amount of
the commissions which were due me under the said 1994 and 1997 written Sales
Compensation Agreements.@





[10]          Because
we conclude that these unpled contentions have no
merit, we need not address whether they were tried by consent.





[11]          Schwager does not complain on appeal that any of TeleCheck=s grounds for summary judgment were invalid as
asserting a failure to state a cause of action. 
See Perry v. S.N., 973 S.W.2d 301, 303 (Tex. 1998) (stating that
a court may not grant summary judgment for failure to state a cause of action
without first giving the plaintiff an opportunity to replead).  Accordingly, we do not address that
issue.  See Jacobs v. Satterwhite, 65 S.W.3d 653, 655-56 (Tex. 2001)
(reversing court of appeals=s reversal of summary judgment on ground not
complained of by appellant).





[12]          Newsome
v. Charter Bank Colonial, 940 S.W.2d 157, 161 (Tex. App.CHouston [14th Dist.] 1996, writ denied); Estate of Townes v. Townes, 867 S.W.2d
414, 419 (Tex. App.CHouston [14th Dist.] 1993, writ denied).





[13]          Newsome,
940 S.W.2d at 161 (holding that specific funds in a particular account captured
by a writ of garnishment on a bank were subject to a claim of conversion); Townes, 867 S.W.2d at 419 (holding that funds which
were held in and withdrawn from a particular account and were intended to be
kept segregated as an intact fund were subject to claim for conversion); Newman
v. Link, 866 S.W.2d 721, 726 (Tex. App.CHouston
[14th Dist.] 1993) (holding that settlement funds from which attorney deducted
his fee but failed to pay the ad litem fee decreed in
the judgment were subject to claim for conversion), writ denied, 889
S.W.2d 288 (Tex. 1994) (per curiam).





[14]          See
Wheat v. Am. Title Ins. Co., 751 S.W.2d 943, 944 n.1 (Tex. App.CHouston [1st Dist.] 1988, no writ) (noting that
judgment for unpaid commissions on title policies could not have been rendered
on a conversion theory); Gronberg v. York, 568
S.W.2d 139, 144 (Tex. Civ. App.CTyler 1978, writ ref=d n.r.e.) (holding that judgment based on claim for return of
funds wrongfully withheld from commissions could not be sustained on theory of
conversion).





[15]          See
Newsome, 940 S.W.2d at 161; Townes, 867
S.W.2d at 419; Newman, 866 S.W.2d at 726.





[16]          Schwager=s summary judgment response further alleged that she
was terminated wrongfully for reporting the illegal theft by Sikorski of her commissions.  However, as TeleCheck=s reply to that response noted, Texas law does not
recognize a common law cause of action for retaliatory discharge of a private, i.e.,
non-governmental, employee who reports the illegal activities of others in the
workplace.  See Austin v. HealthTrust,
Inc.-The Hosp. Co., 967 S.W.2d 400, 401, 403 (Tex. 1998).  Moreover, although Schwager=s petition also alleged she was fired due to her age,
she assigns no error on appeal regarding that claim.  Therefore, we do not address it.





[17]          See
Sabine Pilot Service, Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985).





[18]          See
Watson, 51 S.W.2d at 827; Randolph, 29 S.W.3d at 278 (holding
that letter referring to unlawful conduct and phone conversation accusing
unlawful conduct were privileged).





[19]          See
Specialty Retailers, 933 S.W.2d at 492.





[20]          Senior
Justice Joe L. Draughn sitting
by assignment.