**AMERIGROUP TEXAS, INC., Appellant**

v.

**TRUE VIEW SURGERY CENTER, L.P., d/b/a Town Park Surgery Center, Appellee**

NO. 14–15–00086–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 11, 2016

Jack G. Carnegie, David W. Salton, Joshua Walton Wolfshohl, Ray Thomas Torgerson, Houston, TX, for appellant.

Jessica Bresler, Charles Nichols, Houston, TX, for appellee.

Panel consists of Justices McCally, Busby, and Brown.

**OPINION**

Sharon McCally, Justice

Appellant Amerigroup Texas, Inc., is a Medicaid managed care organization. Appellee True View Surgery Center, L.P., d/b/a Town Park Surgery Center (Town Park) is an out-of-network health care provider that served some of Amerigroup's Medicaid members. Amerigroup sued Town Park for contractual and equitable claims to recover alleged overpayments that Amerigroup made to Town Park for 239 dental procedures.

Amerigroup alleged an oral contract between an Amerigroup employee, Nancy Jones, and an unnamed representative of Town Park for Amerigroup to pay Town Park the Medicaid rate ($630) for the dental procedures on a go-forward basis. Town Park billed Amerigroup its full charge (usually $9,000). Over the course of several years, Amerigroup paid Town Park less than the billed amounts but more than the Medicaid rate for each of the 239 procedures.

The trial court granted Town Park's first motion for summary judgment on Amerigroup's equitable claims and Town Park's second motion for summary judgment on Amerigroup's breach of contract claim. In five issues, Amerigroup appeals the final judgment on its claims for breach of contract, money had and received, and unjust enrichment.

We affirm.

**I. CONTRACT CLAIM**

In its first four issues, Amerigroup challenges the trial court's granting of Town Park's second motion for summary judgment on Amerigroup's breach of contract claim in accordance with the four grounds urged in the motion. When, as here, the trial court grants summary judgment without specifying the grounds relied upon, we must affirm if any of the grounds are meritorious. *See, e.g., FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). Amerigroup's second issue concerning apparent authority is dispositive, and we hold that Town Park was entitled to summary judgment on that ground.

First, we address whether a no-evidence motion for summary judgment is a proper vehicle for challenging an agent's purported apparent authority. Then, we review general standards for summary judgment. Finally, we hold that there is no evidence of apparent authority of a Town Park employee—specifically, no evidence of Town Park's conduct that would have led a reasonably prudent person to assume that the person with whom Jones spoke had authority to bind Town Park in an agreement to accept Medicaid rates for dental procedures occurring years into the future.

**A. No–Evidence Motion is Appropriate Vehicle**

 Initially, Amerigroup contends that the trial court erred by granting summary judgment on the breach of contract claim because Town Park could not prevail on its no-evidence motion for an affirmative defense of lack of authority. *See, e.g., Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677,

680 (Tex.App.–Houston [14th Dist.] 2003, no pet.) (holding that a party may never obtain summary judgment based on a no-evidence motion on an affirmative defense for which it has the burden of proof). Town Park responds that its agent's apparent authority had to be proven by Amerigroup, and therefore, a no-evidence motion was an adequate vehicle for summary judgment. We agree with Town Park.

Although opinions are discordant on the issue of who bears the burden to plead authority or the lack thereof,[1] the Texas Supreme Court has consistently held that the burden of proving apparent authority rests with the party who alleges it. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex.2007) ("Texas law does not presume agency, and the party who alleges it has the burden of proving it.") (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271, 271 (1944)); *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 778–79 (Tex.1974) ("[O]ne seeking to charge a principal through apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person to suppose that the agent had the authority he purports to exercise."); *see also United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 563 (Tex.App.–Houston [14th Dist.] 2012, no

pet.); *Moe v. Option One Mortg. Corp.*, No. 14–07–00550–CV, 2009 WL 136892, at *5–6 (Tex.App.–Houston [14th Dist.] Jan. 20, 2009, no pet.) (mem.op.).

In *Gaines v. Kelly*, the Texas Supreme Court tacitly approved of a defendant's use of a no-evidence summary judgment motion to challenge the scope of its agent's authority. *See* 235 S.W.3d 179, 180, 185–86 (Tex.2007) (rendering take-nothing judgment in accordance with the trial court's ruling on a no-evidence motion for summary judgment on the issue of apparent authority of the defendant's agent). And Town Park's use of a no-evidence motion was consistent with this court's precedent because Amerigroup bore the burden of proving apparent authority. *See Priddy v. Rawson*, 282 S.W.3d 588, 594–95 (Tex.App.–Houston [14th Dist.] 2009, pet. denied) (holding that a no-evidence motion was proper on an issue for which the non-movant bore the burden of proof).

Accordingly, we hold that a no-evidence motion was an appropriate vehicle for challenging the apparent authority of its agent to bind Town Park in contract.

## B. Standard of Review

In a no-evidence summary judgment motion, as here, the movant asserts that

---

**1.** *Compare Arndt v. Nat'l Supply Co.*, 633 S.W.2d 919, 923 (Tex.App.–Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding, in a suit on a sworn account, that the defendant-guarantor of the corporation's debt could not raise lack of authority of the corporation's agent who agreed to the corporation's debt because the corporation admitted every element of the sworn account and the corporation did not plead lack of authority), *with Southline Equip. Co. v. Nat'l Marine Serv. Inc.*, 598 S.W.2d 340, 342 (Tex.Civ.App.–Houston [14th Dist.] 1980, no writ) (noting that for the plaintiff "to recover on a theory of apparent authority of [the defendant's] agents, the general rule requires that such apparent authority, or estoppel, be specifically pleaded

and proved"), *and Atwood v. Kan. City Life Ins. Co.*, No. 14–96–00048–CV, 1997 WL 567941, at *3 n. 5 (Tex.App.–Houston [14th Dist.] Sept. 11, 1997, no pet.) (op. on reh'g) (not designated for publication) (noting that "lack of authority" is "not an affirmative defense which is required to be plead"). *See also Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 940 (Tex.App.–San Antonio 1996, no writ) (noting that lack of authority was "in the nature of" an affirmative defense because the insured bore the burden of proving that the appraisal award, made pursuant to an insurance policy, was "unauthorized"; however, placing summary judgment burden to prove express actual authority on the party seeking to establish authority).

there is no evidence of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial. Tex.R. Civ. P. 166a(i). The trial court must grant the motion unless the non-movant produces summary judgment evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i). The non-movant is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." *Hamilton v. Wilson*, 249 S.W.3d 425, 427 (Tex.2008) (quotation omitted).

We review the summary judgment evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable fact finders could, and disregarding contrary evidence unless reasonable fact finders could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We will reverse a no-evidence summary judgment if there is evidence that would enable reasonable and fair-minded fact finders to differ in their conclusions. *See Hamilton*, 249 S.W.3d at 427.

## C. No Evidence of Apparent Authority

Town Park urged in its motion there was no evidence of actual or apparent authority for the person who spoke with Jones to make the agreement Amerigroup alleged—that in return for Town Park providing the facility for dental procedures, Town Park would accept payment at Medicaid rates. Amerigroup contends it raised a fact issue about whether Town Park, by its conduct, clothed the agent

with apparent authority to make such an agreement.[2]

Apparent authority is based on estoppel and arises either (1) from a principal knowingly permitting an agent to hold himself or herself out as having authority, or (2) by a principal's actions that lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he or she purports to exercise. *Gaines*, 235 S.W.3d at 182. The principal's full knowledge of all material facts is essential to establish a claim of apparent authority. *Id.* Only the conduct of the principal is relevant. *Id.* The standard is that of a reasonably prudent person using diligence and discretion to ascertain the agent's authority. *Id.* at 182–83. "Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Id.* at 183. The relevant issue is not merely the existence of an agency relationship, but rather the scope of that agency. *Id.* at 184.

The parties agree that Dr. Patrick Ralph and other dental surgeons performed at least 239 procedures at Town Park for Amerigroup's members between 2008 and 2010. Nancy Jones, an Amerigroup employee, testified by deposition that she received a request from an employee of Dr. Ralph's to authorize a dental procedure at Town Park in the 2004 to 2006 time period. Jones called Joann Deases, a Town Park employee who worked in Town Park's scheduling department. Jones told Deases that Jones need-

---

**2.** At oral argument, Amerigroup suggested there was some evidence of actual authority, as well. Amerigroup did not make this argument in its appellate brief, and therefore, we decline to address it. *See Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, No. 14–09–

00772–CV, 2011 WL 2739517, at *5 n. 4 (Tex. App.–Houston [14th Dist.] Jan. 4, 2011, no pet.) (mem.op.); *Poland v. Willerson*, No. 01–00198–CV, 2008 WL 660334, at *5 (Tex.App.–Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem.op.).

ed to find out if Town Park would accept the Medicaid rate for the subject dental procedure. Deases said that Deases "wasn't it," and "it had to be somebody from management." Jones testified she knew Deases did not have authority to bind Town Park to accept the Medicaid rates.

Jones testified that Deases gave Jones the name and phone number of "the one to talk to" about reimbursement rates. Jones could not remember the person's name, title, or department. Jones never asked the person's title or role. But, viewing the evidence in the light most favorable to Amerigroup, a fact finder could infer that the person was Sourabh Sanduja, an "administrator" at Town Park in the billing department.[3] We indulge this inference for the remainder of the analysis.

Jones testified that she initially called Town Park to discuss a single procedure for a single patient on a single date of service. Jones testified that Sanduja agreed orally to accept the Texas Medicaid fee schedule. Further, Sanduja "verbalized his gratitude that we were able to work something out and to be able to approve the request coming from Dr. Ralph because they were dealing with him quite a bit." Jones believed that Town Park, through Sanduja, was agreeing to accept Medicaid rates for the dental procedures "from that point forward."

Amerigroup argues that a third party may rely on apparent authority when an employer places an employee in a position for which holders of the position in the industry or setting customarily have authority of a specific scope, citing the Restatement (Third) of Agency § 1.03 cmt. b (2006). However, the evidence on this point is lacking in at least two respects.

First, Amerigroup has not cited any evidence concerning the general scope of authority for a billing administrator in the health care industry or what the usual, customary, or ordinary contracts of a person in that position would be. *See Elaazami v. Lawler Foods, Ltd.*, No. 14–11–00120–CV, 2012 WL 376687, at *4 & nn. 6–7 (Tex.App.–Houston [14th Dist.] Feb. 7, 2012, no pet.) (mem.op.); *see also* Restatement (Third) of Agency § 3.03 cmt. c (2006). So, there is no evidence it would be reasonable for Jones to believe Sanduja had authority to make a binding promise to accept Medicaid rates for all future dental procedures based on the mere title of "administrator" and the customary authority of a person in that position. *Cf. Elaazami*, 2012 WL 376687, at *4 n. 6 (title of vice president alone does not create apparent authority because it does not have a standardized or customary meaning associated with particular functions or authority) (citing Restatement (Third) of Agency § 3.03 cmt. e(4)).

Second, Jones did not know, and never asked anyone, what Sanduja's title or role

---

**3.** In a 2011 email, Jones wrote that she had spoken with an "administrator" at Town Park about Town Park's acceptance of Medicaid rates. Sanduja testified by affidavit that he was the "administrative director" for Town Park and he was knowledgeable about Town Park's "billings and reimbursements." A Town Park organizational chart identified him as an "administrator." Deases testified that if Jones had raised the issue of reimbursement, Deases would have referred Jones to the billing department.

However, we decline Amerigroup's invitation to take judicial notice of Amerigroup's evidence attached to its reply brief, which purportedly quotes from Sanduja's employment contract with Town Park. The document is not in the record and cannot be considered. *See, e.g., Fox v. Alberto*, 455 S.W.3d 659, 668 n. 5 (Tex.App.–Houston [14th Dist.] 2014, pet. denied).

was at Town Park. Unquestionably, Jones could not have formed a reasonable belief about Sanduja's scope of authority, based on his title of administrator, if she never asked what his title was. *See* Restatement (Third) of Agency § 3.03 cmt. c ("If a third party knows that an agent is an agent for an organization but is unaware of the agent's position, ... the principal is not accountable for the third party's belief in the agent's authority.... [A] basis reasonable to believe that the agent is authorized to bind the organization ... would be lacking, for instance, if the third party is unaware of the agent's position within the organization."). The only record evidence of Jones referring to her contact as an administrator was in 2011, at least five years after the conversation and after Amerigroup paid for the dental procedures underlying its contract claim.

Deases's suggestion that Sanduja was "the one to talk to" and "somebody from management" provides no details about Sanduja's scope of authority and is, therefore, conclusory regarding Sanduja's scope of authority. But even assuming that Deases's statements could be considered Town Park's manifestations of authority concerning Sanduja, Jones acknowledged that she had called Deases to discuss only a single procedure for a single patient on a single date of service. Deases's statements, therefore, would not convey to a reasonably prudent person that Sanduja had authority to promise acceptance of Medicaid rates for all future dental procedures performed at Town Park. *Cf. Gaines*, 235 S.W.3d at 179 (evidence that the agent had authority to deliver and explain loan paperwork was not evidence that the scope of the agent's apparent authority included the ability to commit the lender to the loan).

▮ Amerigroup also notes that apparent authority may be derived from "a course of dealing, or from a number of acts assented to or not disavowed." *See Marathon Oil Co. v. Hadley*, 107 S.W.2d 883, 888 (Tex.1935); *see also Elaazami*, 2012 WL 376687, at *5. Amerigroup refers to its corporate representative's testimony that it is common for Amerigroup to "establish everything" the first time a patient is referred to an out-of-network provider and thereafter have a course of dealing. In accordance with this practice, Jones subsequently authorized the dental procedures in many conversations with Deases. But Jones clarified at her deposition that she was not suggesting Deases had authority to agree to Medicaid rates, and Jones could only recall a single conversation with Sanduja about Town Park's acceptance of Medicaid rates.

Amerigroup's evidence does not indicate a course of dealing between the parties to indicate that Town Park assented to, or failed to disavow, Sanduja's promise. Town Park did not engage in a course of dealing with Amerigroup consistent with Sanduja's promise, such as by billing or accepting the Medicaid rate from Amerigroup, or by ratifying any other promises by an administrator at Town Park. *Cf. Elaazami*, 2012 WL 376687, at *5 (holding that an employee's direct supervisor had apparent authority on behalf of the company to promise the employee a bonus; relying on evidence of course of dealing that the company paid the employee a bonus in prior years and had increased the employee's salary in prior years after the direct supervisor told the employee that he would be receiving raises); *Southline Equip. Co. v. Nat'l Marine Serv. Inc.*, 598 S.W.2d 340, 342–43 (Tex.App.–Houston [14th Dist.] 1980, no writ) (holding that there was evidence of apparent authority of the shop foreman of a defendant-company to enter into a contract with the plaintiff for repairs to the defendant's equipment because

there was a course of dealing between the parties: the defendant had contracted for similar repairs from the plaintiff on prior occasions, so the plaintiff's agent would be reasonable in believing that the defendant's agent had authority to contract for the more recent repairs). Amerigroup's purported "course of dealing" evidence is not evidence that would indicate to a reasonably prudent person that Sanduja had authority to bind Town Park to accept the Medicaid rate.

In its reply brief, Amerigroup suggests there were "contemporaneous documents" showing a follow-up conversation during which Sanduja accepted Medicaid rates. However, no rational fact finder could make such an inference from the evidence cited (page 1018 of the supplemental clerk's record), and any such inference is inconsequential nonetheless. Amerigroup claims this document is a screen shot of its employees "memorializing a telephone conversation where Mr. Sanduja reconfirmed Town Park's acceptance of Texas Medicaid." The document includes a note by Jones in April 2010 for an authorization request for a particular patient: "Have accepted 100% of Tx mcd rates in the past." The "contact name" is identified as "Sourabah," and the phone number contains the extension "118."

However, even viewing this evidence in the light most favorable to Amerigroup, Jones's note does not indicate there was a follow-up conversation with Sanduja around that time period. She clarified at her deposition that there was only one conversation with Sanduja. Further, Jones testified by affidavit that the 118 extension was Deases's. And regardless

of whether Sanduja made a follow-up promise, Jones's belief of his authority would still not be reasonable due to the lack of any manifestations by the principal, Town Park.

Finally, and also in its reply brief, Amerigroup contends that "Sanduja was just one Town Park employee for whom Amerigroup's Screen Shots reflect Town Park's acceptance of Texas Medicaid rates." But Amerigroup cites only to documents where supposed Amerigroup employees wrote that their contact person was Deases. Amerigroup cites no evidence that anyone at Amerigroup thought Deases had authority to agree to reimbursement at Medicaid rates, and Jones specifically disclaimed such a belief.

Accordingly, Amerigroup presented no evidence of (1) Town Park knowingly permitting Sanduja to hold himself out as having authority, or (2) Town Park's actions that lack such ordinary care as to clothe Sanduja with the indicia of authority. Thus, there is no evidence that a reasonably prudent person would believe that Sanduja had the authority to bind Town Park in an agreement to accept Medicaid rates. The mere existence of an agency relationship does not mean there is evidence that the scope of Sanduja's apparent authority could include acceptance of Medicaid rates for all future dental procedures. *See Gaines*, 235 S.W.3d at 184–85.

Amerigroup's second issue is overruled. The trial court did not err by granting summary judgment on Amerigroup's contract claim.[4]

---

**4.** In a post-submission brief, Amerigroup contends there is a "legal presumption that industry statutes and regulations are incorporated into the parties' contract," suggesting that Section 353.4(c) of the Texas Administrative Code independently set the price of the

dental procedures at five percent less than the Medicaid rate. Amerigroup did not raise this issue in response to Town Park's second motion for summary judgment, nor did Amerigroup raise it in the opening brief on appeal. We may not reverse on this basis. *See State*

## II. Equitable Claims

■ In its fifth issue, Amerigroup contends the trial court erred by granting a traditional summary judgment on Amerigroup's equitable claims of money had and received and unjust enrichment based on the statute of limitations. Town Park responds that Amerigroup waived its right to complain about the trial court's partial summary judgment on these claims because Amerigroup amended its petition after the trial court's partial summary judgment and omitted the equitable claims. We agree with Town Park.

■ An amended pleading supersedes and supplants all previous pleadings. *Randolph v. Walker,* 29 S.W.3d 271, 274 (Tex.App.–Houston [14th Dist.] 2000, pet. denied); *see also* Tex.R. Civ. P. 65. Claims omitted from the amended pleading are dismissed and abandoned. *See Randolph,* 29 S.W.3d at 275 (citing *Dolenz v. All Saints Episcopal Hosp.,* 638 S.W.2d 141, 142 (Tex.App.–Fort Worth 1982, writ ref'd n.r.e.)); *J.M. Huber Corp. v. Santa Fe Energy Res.,* 871 S.W.2d 842, 844 (Tex. App.–Houston [14th Dist.] 1994, writ denied). Thus, "a viable complaint on appeal is lost when, following an allegedly erroneous ruling by the trial court on a claim, the plaintiff files an amended pleading abandoning the claim upon which the trial court ruled." *Randolph,* 29 S.W.3d at 275 (holding that waiver is mandated by Rule 65 and established case law).

Amerigroup notes that Rule 65 contains an exception for "those instances when it is necessary to look at the prior pleading regarding a question of limitations," quoting *Miller v. Weisbrod, L.L.P. v. Llamas–Soforo,* 2014 WL 6679122, at *11 (Tex. App.–El Paso Nov. 25, 2014, no pet.). *See*

Tex.R. Civ. P. 65 (after substitution of a pleading, the substituted pleading "shall no longer be regarded as a part of the pleading in the record … unless it be necessary to look to the superseded pleading upon a question of limitations"). Amerigroup contends that because the basis for the partial summary judgment was limitations, "the exact situation contemplated by TRCP 65's exception" is applicable here. We disagree.

*Miller* is inapposite because it dealt with the timeliness of a motion to dismiss under the Texas Citizens' Participation Act following an amended pleading made outside the deadline established by the Act. *See* 2014 WL 6679122, at *9–11. *Miller* did not substantively address the limitations exception. *See id.* Moreover, Amerigroup cites no authority for the proposition that Rule 65's limitations exception alters the general rule of abandonment and waiver discussed above, and there is contrary authority. *See Johnson v. Coca–Cola Co.,* 727 S.W.2d 756, 758–59 (Tex. App.–Dallas 1987, writ ref'd n.r.e.) (affirming summary judgment on limitations when the defendant was named in the first amended petition, omitted from the second amended petition, and added by the third amended petition; "Once having been dismissed from the suit [in the second amended petition], the third amended petition was ineffective to add that defendant as a party because the statute of limitations had run prior to such filing.").

■ Rule 65's limitations exception applies, instead, when it is necessary for a court to determine whether subsequently added claims relate back to claims asserted in an earlier petition. *See Croley v. Cregler,* 180 S.W.2d 443, 445 (Tex.Civ. App.–Texarkana 1944, no writ) (noting

*Bd. of Ins. v. Westland Film Industries,* 705 S.W.2d 695, 696 (Tex.1986) (court of appeals may not reverse summary judgment on unas-

signed error or on an issue not presented expressly to the trial court).

Rule 65's exception for determining whether an amended petition relates back to the original petition for purposes of limitations); *see also In re B.R.H.*, 426 S.W.3d 163, 167 (Tex.App.–Houston [1st Dist.] 2012, no pet.) (citing Rule 65 for the proposition that an amended pleading relates back to the time of filing of the original petition); *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 651 (Tex.App.–Houston [14th Dist.] 2007, pet. denied) (same).

By amending its petition to omit the equitable claims, Amerigroup waived any error in the trial court's partial summary judgment on those claims. *See Kinney v. Palmer*, No. 04–07–00091–CV, 2008 WL 2515696, at *2–3 (Tex.App.–San Antonio June 25, 2008, no pet.) (mem.op.) (holding that the plaintiffs waived any error concerning the trial court's partial summary judgment on some claims by amending their petition and omitting those claims before the trial court signed a final summary judgment on remaining claims).

Amerigroup's fifth issue is overruled.

### III. CONCLUSION

Summary judgment was proper on Amerigroup's contract claim, and Amerigroup waived any error related to its equitable claims. Accordingly, the trial court's judgment is affirmed.