**Opinion issued March 4, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-23-00452-CV

———————————————

**STEWART & STEWARTS DEVELOPMENT, INC., Appellant**

**V.**

**REUBEN L. WRIGHT, Appellee**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-35465**

---

## MEMORANDUM OPINION

Appellee Reuben L. Wright retained Appellant Stewart & Stewarts Development, Inc. to construct four duplexes on Wright's property for $420,000. Wright made a down payment of $42,000 on the contract. After a two-year delay, Wright sued Appellant Stewart & Stewarts Development, Inc. for breach of the

construction contract. After a bench trial, the trial court rendered judgment in Wright's favor awarding him $21,000 in damages and $9,746.25 in attorney's fees.

On appeal, Stewart argues the trial court erred in awarding Wright a portion of the damage award because Wright's project manager, acting with apparent authority, verbally authorized Stewart to retain $11,400 of the $42,000 down payment. Stewart also argues the trial court erred in failing to file findings of fact and conclusions of law.

We affirm the trial court's judgment.

## Background

In 2017, Appellee Reuben L. Wright contracted with Appellant Stewart & Stewarts Development, Inc. to construct four duplexes on property Wright owned in the City of Needville, Texas ("Project"). The parties agreed on a construction price of $420,000, and Wright agreed to make a down payment of $42,000. The cover page of the construction contract, executed by Wright and by Jaqueline Stewart on behalf of Stewart, identified Stewart as the builder, Jaqueline as Stewart's project manager, Wright as the owner, and Robert Neblett as Wright's project manager.

Articles 3.7.2 and 3.7.3 of the contract require Wright and Stewart to provide the other with the name of their authorized representative for the Project. Article 3.7.5 states: "All instructions from the Owner or his representative shall be given to the Builder or his representative in writing." Article 3.8 required Wright to pay

Stewart a down payment of 10% of the total contract price of $420,000 and make further payments upon completion of different stages of the Project. Aside from the cover page, the contract does not mention Neblett or define the scope of his responsibilites as Wright's project manager and purported representative for the Project.

Although Wright made the required initial down payment of $42,000 in 2017, Stewart's work on the Project was delayed for two years due to permitting issues. In May 2019, Stewart sent an email to Wright stating it would "no longer be the building contractor on the West First Street Duplex Project in Needville, Texas, effective 5/13/2019." According to Stewart, its work on the Project had been delayed by two years "due to predevelopment issues unrelated to the construction of the buildings which had nothing to do with Stewart." Stewart stated that it was eventually "allowed to purchase a building permit" in April 2019, but by this time the "material, cost, and labor associated with the project ha[d] increased, thereby making it not feasible to continue at the contract cost agreed on 4/11/2017." According to Stewart, it had "requested a change order [from Wright] to increase the total project by 5 percent to help offset the cost associated with the two-year delay," but Wright refused the request. Stewart further stated that as a result of the two-year delay, the Project would have "increased costs associated and [Stewart] did not want

3

to continue working on the project without any agreed change order to prevent shortages during construction of the project."

Relevant to the issue on appeal, Stewart's email further stated:

Stewart & Stewarts received verbal permission from the project manager, Robert Neblett, on 5/13/2019, to deduct amounts from the work completed and costs associated with the project. Costs associated to date includes:

1) Building Permit $1,400.00

2) Framework for 4-slabs – $10,000

For a total of $11,400 to be deducted from the initial down payment of $42,000.

Based on Neblett's purported "verbal permission," Stewart retained $11,400 from Wright's initial down payment and returned only $30,600 to Wright.

**The Lawsuit**

Wright sued Stewart for breach of the construction contract. Wright alleged that Stewart breached the contract by failing to "construct the 4-Symmetric Duplexes on Concrete Foundation." According to Wright, Stewart "abandoned the project as of May 13, 2019 by informing [Wright] that [Stewart] would no longer be the Building Contractor on the West First Street Duplex Project in Needville, Texas effective May 13, 2019, unless [Wright] agree[d] to 5% increase in total project cost." Wright alleged there were no provisions in the contract permitting Stewart to increase "the cost of the contract due to delays in the construction of the building."

4

Wright alleged that, as a result of Stewart's breach, Wright had to retain a new builder to complete Stewart's work on the Project at a higher cost. Wright further alleged,

> In the alternative, [Stewart's] breach of contract described hereinabove has injured [Wright], causing [Wright] to pay additional monies for the performance of the new contractor due to the breach of contract. Additionally, [Stewart] retained $10,000.00 from [Wright's] down payment unjustly and when a request for refund was issued, [Wright] refused.

Stewart filed a general denial.[1]

### Trial Testimony

Wright and Jaqueline were the only witnesses that testified during the bench trial.[2]

Wright testified that he paid Stewart a down payment of $42,000 when he signed the contract in April 2017, but Stewart did not begin working on the Project until 2019 because of permitting issues. When asked if Stewart had performed any work on the Project, Wright testified that in 2019, Stewart placed two-by-fours around the area where the buildings' concrete foundations were to be constructed. According to Wright, Stewart did not pour concrete or construct the foundations for the buildings, and the two-by-fours were placed in the wrong location.

---

[1]   Stewart also asserted the statute of frauds as an affirmative defense, but this issue was not litigated during the bench trial. *See* TEX. R. CIV. P. 94.

[2]   Stewart's and Wright's attorneys testified in support of their claims for attorney's fees.

Wright testified that in May 2019, Stewart notified him that it was terminating the contract. Although Stewart returned to Wright $30,600 of the $42,000 down payment, Stewart retained $11,400 for costs Stewart purportedly incurred for the Project, including $10,000 for framework for the four building slabs and $1,400 for a building permit. He testified that Stewart had merely placed "some little bitty boards around four blocks of dirt" and had not performed any work for the $10,000 of the down payment it retained. Wright testified that because of Stewart's wrongful termination of the contract, Wright had to hire another builder to complete the Project at a higher price of $498,000, which was $78,000 more than the $420,000 Wright had agreed to pay Stewart.

When asked about Neblett's role in the Project, Wright testified that Neblett is "a person who knows people." Wright testified that the contract identified Neblett as the project manager and he agreed that a project manager is also known as the general contractor. When asked what a project manager and general contractor's duties entail, Wright testified, "They are the person who is the go-between between the owner and the project that's being submitted by the people who are on site." Wright, who denied hiring Neblett, testified that he paid Neblett's "travel to go onto the job site and interface with the City of Needville engineers."

When asked about Stewart's retention of the $11,400 from the $42,000 down payment, Wright testified that he had no documents reflecting whether Neblett had

6

given verbal approval to Stewart to retain $11,400 of the down payment, and he had no evidence, other than his testimony, that he "disapproved of [Neblett's] approval" of the deduction. Wright testified that all changes to the contract had to be in writing, the contract did not allow Stewart to deduct any portion of the $42,000 down payment, and he never signed an agreement allowing anyone to "give verbal permission for [his] funds to be withdrawn from the down payment."

Jacqueline, Stewart's project manager, testified that Stewart was a subcontractor on the Project and Neblett, as Wright's project manager and general contractor, represented Wright on the Project. Although Wright never sent Jacqueline "an agreement" that Neblett would be the general contractor, Jacqueline testified that Wright nevertheless signed the contract which identified Neblett as Wright's project manager. Jacqueline testified that Neblett, who was responsible for pulling the permits for the Project, gave Stewart permission to pull one of the permits and the architectural plans for the Project. Jaqueline also testified about the reasons for the two-year delay in construction, the permitting issues, and the basis for her request to increase the total contract price of the Project by 5% to cover additional costs caused by the delay.

According to Jacqueline, Neblett gave Stewart verbal approval to retain $11,400 of the $42,000 down payment when Stewart terminated the contract. Although Jacqueline agreed there was "no addendum to [the contract giving] Neblett

7

the authority to make any financial commitments," Jacqueline claimed that an unidentified provision in the contract nevertheless gave Neblett the authority to authorize the payment of a contractor. Jacqueline testified that Wright, the owner, submitted payment under the contract to Stewart, but she disagreed it was "reasonable to expect that if th[ere] was a change in the [amount] to be paid, that was the owner's decision."[3]

Jacqueline testified that the $11,400 Stewart retained from the down payment included the cost of the building permit Stewart purchased for $1,400 and $10,000 for the framing work Stewart performed at the site. According to Jacqueline, Stewart performed the framing work as required by the contract, and she disagreed with Wright's testimony that the work had not been done.

### Judgment and Post-trial Proceedings

The trial court rendered judgment in favor of Wright and awarded him $21,000 in damages and $9,746.25 in attorney's fees. Stewart filed a timely request for findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296 ("In any case tried in the district or county court without a jury, any party may request the court to

---

[3] Although Stewart did not plead apparent authority as an affirmative defense, the record indicates that the issue was tried by consent. *See Acree v. Guar. Fed. Bank, F.S.B.*, No. 01-99-01108-CV, 2001 WL 225688, at *5 (Tex. App.—Houston [1st Dist.] Mar. 8, 2001, pet. denied) (mem. op.) ("Apparent authority is based on estoppel and is thus an affirmative defense.").

8

state in writing its findings of fact and conclusions of law.").[4]  When the trial court failed to file findings of fact and conclusions of law within twenty days of Stewart's request, Stewart filed a timely "Notice of Past Due Findings of Fact and Conclusions of Law."  *See* TEX. R. CIV. P. 297 (stating if trial court fails to file findings of fact and conclusions of law within twenty days of party's request, "the party making the request must, within thirty days after filing the original request, file . . . a 'Notice of Past Due Findings of Fact and Conclusions of Law'").  The trial court did not file findings of fact and conclusions of law.  This appeal followed.

## Apparent Authority

On appeal, the parties agree that the trial court's $21,000 damage award includes the $11,400 Stewart retained from the $42,000 down payment.  In his first issue, Stewart argues the trial court erred by awarding Wright the $11,400 Stewart retained from the down payment because Neblett, as Wright's project manager and general contractor, had apparent authority to act on Wright's behalf and verbally authorized Stewart to keep the $11,400.[5]

At trial, Wright argued that Stewart was not entitled to retain money from the down payment for any alleged construction work because Stewart had not performed

---

[4]  Stewart also filed a timely motion for new trial, which the trial court denied.

[5]  Stewart is not appealing the remaining $9,600 the trial court awarded to Wright as damages or the award of attorney's fees.

the framing work at the site, Neblett lacked authority to authorize Stewart to keep any money from the down payment, and the contract, which required that all instructions be in writing, did not authorize anyone to give verbal permission for funds to be deducted from the down payment. On appeal, Wright argues the trial court did not err in awarding him the $11,400 because there is no evidence that Neblett had apparent authority to speak for or act on Wright's behalf in authorizing such payment.[6]

## A.    Standard of Review and Applicable Law

Stewart does not articulate a standard of review or attempt to apply it to the facts in this case. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018) (stating appellant's failure to provide citations or argument and analysis for the contentions as required by Rule 38.1 can result in waiver). We liberally construe Stewart's first issue as a challenge to the legal sufficiency of the evidence supporting

---

[6]    During trial, Wright did not dispute that Stewart was entitled to retain $1,400 from the down payment for the acquired building permit. On appeal, however, the parties agree that the trial court awarded Wright $11,400 in damages, including the $1,400 for the permit. Stewart argues on appeal that the trial court erred in awarding the amount of $11,400 to Wright because Neblett had apparent authority and authorized Stewart to retain the full $11,400. We thus limit our analysis to the only issue Stewart challenges on appeal—whether Neblett had apparent authority to authorize retention of the $11,400 from the down payment.

the trial court's implicit finding that Neblett lacked apparent authority to act on Wright's behalf when he allegedly verbally instructed Stewart it could retain $11,400 of the $42,000 down payment.

An agent is one who is authorized to transact business or manage some affair for a person or entity. *Townsend v. Univ. Hosp.*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied). A principal is liable for the acts of another acting as its agent only when the agent has actual or apparent authority to do those acts. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

Actual authority is dependent upon the existence of some communication by the principal to the agent. *See id.*; *see also Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 734 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Actual authority is created through written or spoken words or conduct of the principal communicated to the agent.") (citation omitted). Apparent authority, on the other hand, arises "either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions that lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)); *see also R & R Marine, Inc. v. Max Access, Inc.*, 377 S.W.3d 780, 788 (Tex. App.—Beaumont 2012, no pet.) ("Apparent authority arises when a principal

11

intentionally or negligently induces a party to believe that a person is the principal's agent though the principal has not conferred authority on that person."). "[A]pparent authority must be based on the acts of the principal" and "is limited to the scope of responsibility that is apparently authorized." *Gaines*, 235 S.W.3d at 184 (quoting *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004)). Mere declarations of an alleged agent, standing alone, are "incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority." *Gaines*, 235 S.W.3d at 184.

"Because apparent authority is an estoppel principle, a party seeking to recover under such legal theory must show justifiable reliance on the principal's words or conduct resulting in harm to the party." *See Reliant Energy Servs, Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 784 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The standard courts employ when evaluating the reasonableness of a third party's assumptions about apparent authority "is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority." *See Gaines*, 235 S.W.3d at 183 (citing *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 427 (Tex. 1953)); *see also Reliant Energy Servs., Inc.*, 336 S.W.3d at 787 ("'[R]easonable diligence to ascertain [an] agent's authority' is part of the standard under Texas law for determining whether a person is 'reasonably prudent' in the context of apparent authority . . .") (quoting *Gaines*, 235 S.W.3d at 182–83).

The burden of proving apparent authority rests with the party who alleges it. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271, 271 (1944)); *see also United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 563 (Tex. App.—Houston [14th Dist.] 2012, no pet.). A party attacking the legal sufficiency of an adverse finding on an issue on which the party had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A matter is conclusively established only if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the evidence shows there was a conflict, then the elements were not conclusively established. *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986).

When as here, no findings of fact or conclusions of law are filed, "the trial court's judgment implies all findings of fact necessary to support it" and we review any implied factual determinations under "traditional legal and factual sufficiency standards." *Wittau v. Storie*, 145 S.W.3d 732, 736 (Tex. App.—Fort Worth 2004, no pet.).

**B.    Analysis**

According to Stewart, the evidence reflects that Neblett, as Wright's project manager and general contractor, authorized Stewart to keep $11,400 of the initial

down payment of $42,000. And, because Neblett was Wright's project manager and general contractor, Stewart was entitled to rely on Neblett's statement that Stewart could retain the $11,400 "under the doctrine of apparent authority."

Wright responds that there is no evidence that Neblett was his agent or that Neblett had permission to act as his agent. He also argues there is no evidence that Neblett had apparent authority to speak for or act on Wright's behalf when he purportedly told Stewart it could keep $11,400 of the down payment. Wright suggests that he never named Neblett as his agent because the contract was prepared by Stewart and it was Stewart who identified Neblett as Wright's project manager in the contract. Regardless of which party drafted the contract, it is undisputed that Wright executed the contract.[7]

As the party alleging apparent authority, Stewart has the burden to prove that the evidence conclusively establishes all vital facts in support of this issue. *See Dow Chem. Co.*, 46 S.W.3d at 241 (stating party attacking legal sufficiency of adverse finding on issue on which party had burden of proof must demonstrate that evidence

---

[7] Wright also argues that mere declarations of an alleged agent, standing alone, are "incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority." *Gaines v. Kelly*, 235 S.W.3d 179, 184 (Tex. 2007). While this is true, there is no evidence Neblett made any declarations to Stewart regarding his authority to act on Wright's behalf, and Stewart does not rely on any such declarations of authority. Stewart argues that Neblett verbally authorized the payment, but its argument as to why Neblett was purportedly authorized to do so is premised on Neblett's position as Wright's project manager, not on any specific declarations of authority by Neblett.

14

conclusively establishes all vital facts in support of issue). "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc.*, 221 S.W.3d at 597.

To determine whether an agent had apparent authority courts "examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Gaines*, 235 S.W.3d at 183. The only evidence Stewart points to in support of its claim that Neblett had apparent authority to act on Wright's behalf in authorizing Stewart to keep the $11,400 is the contract identifying Neblett as Wright's project manager. The question presented is thus whether Wright's execution of the contract identifying Neblett as his project manager was sufficient to clothe Neblett with the indicia of authority leading a reasonably prudent person to believe Neblett had the authority to verbally authorize payment to Stewart. *See id.* at 182 (stating apparent authority arises "by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise").

While in some cases, the appointment of "a person to a position may be sufficient in itself to create apparent authority," in such cases apparent authority exists only for those things "ordinarily entrusted to one occupying such a position." *Rourke v. Garza*, 530 S.W.2d 794, 803–04 (Tex. 1975). A purported agent's job

title is generally not enough to create apparent authority unless there is also evidence of the general scope of authority for someone holding that title. *See Amerigroup Tex., Inc. v. True View Surgery Ctr., L.P.*, 490 S.W.3d 562, 567 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding there was no evidence it would be reasonable for third party to believe billing administrator had authority to act on principal's behalf "based on the mere title of 'administrator' and the customary authority of a person in that position" when there was no "evidence concerning the general scope of authority for a billing administrator in the health care industry or what the usual, customary, or ordinary contracts of a person in that position would be."); *see also Elaazami v. Lawler Foods, Ltd.*, No. 14–11–00120–CV, 2012 WL 376687, at *4 & n.6 (Tex. App.—Houston [14th Dist.] Feb. 7, 2012, no pet.) (mem. op.) (stating title of vice president alone does not create apparent authority because it does not have standardized or customary meaning associated with particular functions or authority) (citing RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. e(4)).

Stewart does not cite any authority that supports its argument that Neblett's title as project manager alone vested him with apparent authority to authorize payments on behalf of Wright. Wright testified that a project manager or general contractor is "the person who is the go-between between the owner and the project that's being submitted by the people who are on site." Other than this testimony, there is no evidence regarding the scope of a project manager and general

contractor's authority under a construction contract or the contract at issue here, much less that such duties involve authorizing payments to subcontractors on behalf of the owner.

Jacqueline testified that the contract authorized Neblett to give permission for the payment of a contractor. Jacqueline, however, did not identify the relevant portion of the contract she was relying upon. More importantly, the plain language of the contract does not expressly authorize Neblett to authorize payment to Stewart or any other party, and Jacqueline agreed there was no addendum to the contract authorizing Neblett to "make any financial commitments." Also, contrary to Jacqueline's testimony, Wright testified that Neblett did not have authority to act on his behalf when Neblett purportedly verbally authorized Stewart to retain $11,400 from the $42,000 down payment. There is thus no evidence that Neblett's scope of work as a project manager and general contractor included authorizing payments to subcontractors on behalf of Wright and, at most, there is conflicting testimony over whether Neblett had authority to verbally authorize payment to Stewart.[8]

---

[8]    The contract also expressly states that "[a]ll instructions from [Wright] or his representative shall be given to [Stewart] or his representative in writing." There is no evidence that Neblett authorized Stewart in writing to keep the $11,400. Stewart argued that Neblett's instruction had been verbal. But no evidence was submitted to support such verbal authorization other than Jacqueline's testimony and her email stating Neblett had authorized the payment.

17

In light of the evidence before us, we hold Stewart failed to conclusively prove that Neblett had apparent authority to verbally authorize Stewart to retain $11,400 of the $42,000 down payment or that the contract otherwise authorized him to verbally authorize payments. *See Gaines*, 235 S.W.3d at 182–83 (stating standard applicable to reasonableness of third party's assumptions about apparent authority "is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority"); *see also City of Keller*, 168 S.W.3d at 816 (stating issue conclusively established only if reasonable people could not differ as to conclusions to be drawn from evidence); *Hathaway*, 711 S.W.2d at 229 (stating elements are not conclusively established when there is conflicting evidence). Because Stewart failed to prove that the evidence conclusively established all vital facts in support of this issue, we hold there is legally sufficient evidence supporting the trial court's implicit finding that Neblett lacked apparent authority to act on Wright's behalf when he purportedly authorized Stewart to keep $11,400 of the $42,000 down payment. *See Dow Chem. Co.*, 46 S.W.3d at 241 (stating party attacking legal sufficiency of adverse finding on issue on which party had burden of proof must demonstrate that evidence conclusively establishes all vital facts in support of issue).

We overrule Stewart's first issue.

**Findings of Fact and Conclusions of Law**

In its second issue, Stewart argues that the trial court erred in failing to issue findings of fact and conclusions of law and that the trial court's failure is presumed harmful. Alternatively, it argues the trial court's failure to file findings and conclusions was harmful because it prevented Stewart from properly presenting its case on appeal.

Wright argues that harm is presumed unless the record affirmatively shows that the requesting party was not harmed by the absence of findings of fact and conclusions of law and there is no harmful error where, as here, the evidence presented at trial was neither lengthy nor complicated, and the requesting party can brief all relevant issues. According to Wright, Stewart has not identified any issue it was unable to brief on appeal as a result of the trial court's failure to file findings and conclusions.

**A.      Standard of Review**

If findings of fact and conclusions of law have been properly requested, the trial court has a mandatory duty to file them. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). A trial court's failure to file findings of fact and conclusions of law when timely requested is presumed harmful unless the record affirmatively shows that the complaining party suffered no injury. *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2011, no pet.);

19

*Alsenz v. Alsenz*, 101 S.W.3d 648, 652 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (same). Error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *See* TEX. R. APP. P. 44.1(a)(2) (stating error reversible when error "probably prevented the appellant from properly presenting the case to the court of appeals").

The presumption of harm does not apply to simple cases where the evidence presented at trial was neither lengthy nor complicated and the appellant is able to brief all of the relevant issues. *See Rumscheidt*, 362 S.W.3d at 665–66 (holding appellant not harmed by trial court's failure to make findings of fact and conclusions of law when evidence presented at trial was neither lengthy nor complicated and appellant "was able to brief all of the relevant issues and does not identify any issue that he was unable to brief as a result of the trial court's failure to make findings of fact and conclusions of law"); *Alsenz*, 101 S.W.3d at 652 (holding appellant was not harmed by trial court's failure to make findings of fact and conclusions of law when evidence and issues raised at trial were clearly reflected in record and appellant did not appear to have had any problem presenting his case on appeal); *see also York v. Cooper-York*, No. 02-20-00356-CV, 2021 WL 2753527, at *3 (Tex. App.—Fort Worth July 1, 2021, pet. denied) (mem. op.) (stating "presumption of harm does not apply to a simple case because an appellant is not faced on appeal with the task of dissecting multiple permutations of why the trial court may have ruled as it did").

**B.  Analysis**

Stewart argues without further elaboration that the trial court's failure to file findings of fact and conclusions of law "with regards as to whether Robert Neblett is the Project Manager (General Contractor) for the Owner and Plaintiff, Reuben Wright, and was clothed with apparent authority" was harmful because it prevented Stewart from properly presenting its case on appeal.

Stewart appeals from a judgment rendered after a one-day bench trial in a case involving "a construction contract dispute relating to the retaining of certain construction funds by" Stewart.  Stewart does not identify any issue he was unable to brief because of the trial court's failure to make findings of fact and conclusions of law.  Indeed, Stewart's briefs succinctly and sufficiently describe the testimony and evidence supporting its claim that Neblett had apparent authority to authorize the payment of the $11,400.[9]  The reporter's record is also straightforward and concise.  It consists of approximately sixty-five pages of testimony from two witnesses, Wright and Jacqueline, who testified about Neblett's alleged authority to

---

[9]  Stewart also filed a motion for new trial, and a reply in support of the motion, in which he argued the purportedly undisputed evidence conclusively proved Neblett's apparent authority.  The trial court signed an order denying the motion, noting Stewart "failed to prove a sufficient basis upon which to grant a new trial."  Thus, in addition to fully briefing his apparent-authority argument on appeal, Stewart was able to make the argument to the trial court, which considered and denied it, further establishing Stewart suffered no harm by the trial court's failure to file findings and conclusions.

verbally authorize Stewart to keep the $11,400. And the exhibits are not voluminous or complicated. The key documents Stewart identifies are the contract and the email from Stewart repudiating the contract and stating Neblett authorized retention of the $11,400.

Given the issue presented on appeal, the brevity of the evidence presented on this issue, and facts and arguments in Stewart's briefing indicating that it was able to fully brief its challenge to the trial court's implicit finding that Neblett lacked apparent authority to authorize payment to Stewart, we conclude that Stewart was not harmed by the trial court's failure to file findings of fact and conclusions of law regarding whether Neblett had apparent authority to verbally authorize Stewart to keep the $11,400. *See Alsenz*, 101 S.W.3d at 652 (holding appellant was not harmed by trial court's failure to make findings of fact and conclusions of law when evidence and issues raised at trial were clearly reflected in record and appellant did not appear to have had any problem presenting his case on appeal); *York*, 2021 WL 2753527, at *4 ("The simplicity of the record and the claim, in combination with his brief's demonstrated ability to attack the trial court's presumed findings, assures us that Appellant has not been harmed by a need to guess why the trial court ruled as it did; thus, the trial court's failure to file findings of fact and conclusions of law does not constitute harmful error.").

We overrule Stewart's second issue.

**Conclusion**

We affirm the trial court's judgment.

                                        Veronica Rivas-Molloy
                                        Justice


Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.